UNITED STATES, Appellant

v.

WILLIE J. FLEMING, Private–2, U. S. Army, Appellee

3 USCMA 461, 13 CMR 17

462

LT COL William R. Ward; U. S. Army, 1ST LT Bernard A. Feurestein, U. S. Army, and 1ST LT Roderick V. Brown, U. S. Army, for Appellant.

LT COL Edgar R. Minnich, U. S. Army, CAPT William C. Irby, Jr., U. S. Army, and 1ST LT Alexander J. Jemal, Jr., U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Tried by general court-martial on November 14, 1952, the accused was convicted of an unauthorized absence from September 8, 1952, to October 20, 1952, with the "wrongful intent of permanently preventing the completion of the period of his enlistment and useful service as a soldier," in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. The convening authority approved the finding of guilty and the sentence, which included a dishonorable discharge and confinement at hard labor for two years. On appeal, a board of review held that the specification alleged only a violation of Article 86, Uniform Code of Military Justice, 50 USC § 680. It further held that there was compelling evidence to support a conviction for a violation of that Article. But because of the erroneous admission in evidence of certain testimony, the board of review felt legally obliged to set aside the finding of guilty and order the charge dismissed. Thereupon, The Judge Advocate General of the Army certified to this Court the following issue:

"Was the receipt in evidence of accused's admission bearing solely upon the intent issue prejudicial error which would preclude approval of a finding of guilty of absence without leave?

At first glance, the specification seems to allege conduct by the accused intended to prevent his separation from the service. Examined in the light of the theory upon which the case was tried, it appears as an intentional unauthorized absence for the purpose of procuring a discharge. More succinctly, the accused was "bucking for a BCD." Morning report entries established his unauthorized absence on September 8, 1952, and his subsequent return to military control on October 20. To prove the alleged intent, the prosecution called as a witness the Assistant Staff Judge Advocate who had had a post-trial interview with the accused in connection with a previous court-martial. The testimony of this witness is the subject of the question certified for review by The Judge Advocate General.

In August 1952, the Assistant Staff Judge Advocate reviewed a general court-martial conviction of the accused for a twenty-six-day absence without leave in violation of Article 86. Part of the sentence adjudged by the court-martial was a bad-conduct discharge. For consideration in the review, the reviewer called in the accused to have a talk with him regarding his civilian background, and about other factors which did not appear in the record of trial. At the interview, the Assistant Staff Judge Advocate suggested that, if the accused promised "to soldier," he would try to obtain a suspension of the punitive discharge. The accused rejected the suggestion, and said that he did not want the discharge suspended. He also said that he wanted to get out of the Army, and "that was the reason why he had gone AWOL." The accused stated further that he could make more money out of the Army than in it, and neither he nor his prospective employer

**463**

cared about the adjudged bad-conduct discharge. Objection was made to the admission in evidence of the accused's statements on the ground of hearsay. The law officer overruled the objection "on the grounds stated."

The accused testified and gave his version of the interview. In substance, he specifically denied that he told the Assistant Staff Judge Advocate that he had gone absent without leave for the purpose of getting a discharge, and he categorically denied any intention of committing any military offense in order to get a discharge. In his redirect testimony, the accused admitted that he had absented himself on September 8, but only because he "just wanted to go home."

The board of review held that the testimony of the Assistant Staff Judge Advocate was inadmissible. It considered the relationship between a convicted accused and the post-trial interviewer as "quasi-confidential" in nature, and intended to be used "solely with reference to the conviction with which the post-trial interviewer is concerned." The board reasoned that the fundamental purpose of the post-trial interview here was to obtain complete information on the military and civilian background of the accused for the reviewing and clemency authorities to assist them in the proper performance of their duties under Articles 64, 66, 71, and 74, Uniform Code of Military Justice, 50 USC §§ 651, 653, 658, and 661. To accomplish that purpose, it became necessary to interview the accused. And, unless the accused was encouraged to disclose all relevant facts in his background, little of the enlightening information could be obtained. Fairness to the accused required that disclosures made by him at the post-trial interview be used only for the purpose intended, and "only under the most unusual circumstances" should they be used against him at a subsequent court-martial trial. The board found no "unusual circumstances" present in this case. It concluded that the error in the admission of the accused's post-trial interview statements was so prejudicial to the high standards of military justice that dismissal of the charge was re-

quired, in spite of the sufficiency of the specification and the evidence to support a conviction of a violation of Article 86, Uniform Code of Military Justice, supra.

Before we consider the merits of the certified question, we must note that it does not put in issue the board of review's determination that the relationship between the post-trial interviewer and a convicted accused is at least so quasi-confidential in nature as to make accused's statements to the interviewer privileged communications. The certified question is limited to whether the admission of these communications was so prejudicial as to preclude approval in this case of a finding of guilty of simple unauthorized absence. Although we may expand the scope of inquiry raised by a certified question, United States v. Herndon, 1 USCMA 461, 4 CMR 53, decided July 17, 1952, the peculiarities of this case are such that no useful purpose will be served by going beyond the specific frame of this question. Accordingly, we pass over the able arguments of both Government and defense counsel as to whether accused's post-trial interview statements were privileged communications, and we express no opinion thereon.

For the purposes of this case, we assume that it was error to allow the Assistant Staff Judge Advocate to testify to communications with the accused received by him in his capacity of post-trial interviewer. We further assume that defense counsel's objection was sufficient to preserve the error for appellate review. But see: Profitt v. United States, 264 Fed 299 (CA9th Cir) (1920) ; La Moore v. United States, 180 F2d 49 (CA9th Cir) (1950). However, error is not a basis for reversal, unless it is prejudicial.

Apparently the board of review based its decision upon general prejudice. But error in the admission or exclusion of evidence is normally tested by the standards of specific prejudice. United States v. DeCarlo, 1 USCMA 91, 1 CMR 90, decided December 28, 1951; United States v. Nichols, 2 USCMA 27, 6 CMR 27, decided October 14, 1952; United

States v. Barcomb, 2 USCMA 92, 6 CMR 92, decided December 19, 1952. Moreover, nothing in the ▆▆▆▆▆ Constitution, the Uniform Code of Military Justice, or in the Manual for Courts-Martial, United States, 1951, expresses a positive and inflexible prohibition against disclosure of post-trial interview communications of an accused to other than the reviewing and clemency authorities. In the absence of any such positive command of exclusion there is no departure from an essential norm of military due process. Similarly lacking is any substantial basis for making such communications "structural members" of the "judicial edifice," Judge Brosman's concurring opinion in Woods and Duffer, 2 USCMA 203, 8 CMR 3, decided February 19, 1953, which would require reversal on the mere fact of disclosure. The board of review itself recognized admissibility in "unusual circumstances." Manifestly then, the error in admission does not demand application of the principle of general prejudice.

Specific prejudice requires evaluation of the error in the light of the particular facts. Here, morning report entries, admitted without objection, showed the accused to be in an unauthorized absence status on September 8; later, he was dropped from the rolls as a deserter; and he did not return to military control until October 20. Added to this evidence is accused's testimony that he absented himself on September 8 because he "just wanted to go home." The content of defense counsel's question which elicited the admission, taken with the answer, virtually amounted to a judicial confession of guilt of an unauthorized absence for the period alleged. But, even if it fell short of that, the inescapable conclusion to be drawn from the evidence is, that accused is guilty of an unauthorized absence in violation of Article 86.

A specific intent is not an element of an unauthorized absence in violation of Article 86. Manual for Courts-Martial, supra, paragraph 165, page 315. Hence, whatever bearing the communications to the post-trial interviewer may have had on the intent charged in the specification, they could have no effect on the finding that the accused was guilty only of an unauthorized absence. When the board eliminated the specific intent charged, it removed any possible harm that could result from the admission of accused's statements. The evidence of an unauthorized absence for the period alleged is so clear and compelling that no fair risk of prejudice exists with respect to the finding that accused is guilty of a violation of Article 86.

Sometimes prejudice in connection with the imposition of sentence may require reversal of a conviction. ▆▆▆▆▆ United States v. Keith, 1 USCMA 493, 4 CMR 85, decided July 30, 1952; United States v. Bound, 1 USCMA 224, 2 CMR 130, decided March 13, 1952. But, by excluding the inadmissible evidence from its determination of an appropriate sentence for an unauthorized absence, the board of review could have effectively removed any taint of error. See United States v. Zimmerman, 2 USCMA 12, 6 CMR 12, decided October 6, 1952.

A board of review is under a duty to affirm so much of the findings of guilty as is not affected by error ▆▆▆▆▆ committed at the trial. So, too, is it under a duty to affirm so much of the sentence as it deems appropriate on the basis of the entire record. Article 66, Uniform Code of Military Justice, supra; United States v. Shepard, 1 USCMA 487, 492, 4 CMR 79, 84, decided July 25, 1952. Since the assumed error could have had no influence upon the finding that the accused was guilty of a violation of Article 86, supra, and since any harm with respect to the sentence could have been cured by its action, the board of review was not legally bound to set aside the conviction in its entirety and dismiss the charge. United States v. Gilgallon, 1 USCMA 263, 2 CMR 170, decided March 21, 1952; United States v. Goddard, 1 USCMA 475, 4 CMR 67, decided July 24, 1952. As we said in Gilgallon: "error without injury does not require reversal"; much less does error without injury require dismissal of a proper charge which was clearly and convincingly supported by the evidence. The decision of the board

of review in this case was, therefore, based upon an erroneous interpretation of the law. This should be corrected. However, we express no opinion as to what constitutes an appropriate sentence. United States v. Gilgallon, supra.

Accordingly, the certified question is answered in the negative. The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Army for such action as may be consistent with this opinion.

Judge BROSMAN concurs.

Judge LATIMER concurs in the result.