UNITED STATES, Appellee,

v.

Cecil L. HILL, Jr., Airman First Class,
U. S. Air Force, Appellant.

No. 33,369.
ACM 22023.

U. S. Court of Military Appeals.

Nov. 28, 1977.

*Colonel Robert W. Norris* and *Captain David A. Bateman* were on the pleadings for the Appellant, Accused.

*Colonel Julius C. Ullerich, Jr.,* and *Major Alvin E. Schlechter* were on the pleadings for Appellee, United States.

Opinion of the Court

FLETCHER, Chief Judge:

The appellant was convicted, contrary to his plea, of rape in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. The findings and his sentence to a dishonorable discharge, confinement at hard labor for four years, and reduction to the grade of airman basic were approved by the convening authority and the United

States Air Force Court of Military Review. We granted review to consider whether it was prejudicial error to subject the appellant to a post-trial interview without the presence of his trial defense counsel. Upon examination of the normal procedures involved and the facts of this case we resolve the question in favor of the appellant. Reversal is required.

The pertinent facts are not in dispute. Airman Hill was interviewed by a Captain Davidson, the assistant staff judge advocate, who served the dual functions of post-trial reviewer and clemency officer pursuant to paragraph 7–5 AFM 111–1 (Aug. 25, 1975).[1] Under the provisions of this regulation, a post-trial interview is required in cases such as this; the regulation makes no reference to the right to have the assistance and presence of counsel at this interview.[2] In this case, the trial defense counsel specifically requested to be present during any interview of his client.[3] This request was received by Captain Davidson prior to the interview in question and denied because, in Captain Davidson's opinion, the presence of counsel might frustrate the actual purposes of the interview.[4] Thus, despite the request for the presence of counsel, the post-trial interview of Airman Hill took place without counsel being present.

Counsel for the appellant have structured a multi-faceted argument against the procedure utilized in this case. They first contend that the rights under Article 31, UCMJ, were denied the appellant, and cite *United States v. Simpson* (A.C.M.R.1976),[5] for the proposition that the rule announced by this Court in *McOmber*[6] must apply to all post-trial interviews, thus requiring both the giving of rights warnings under Article 31, and the presence of counsel. Counsel further argue that under the vast panoply of duties of trial defense counsel mentioned in *United States v. Palenius*, 25 U.S.C.M.A. 222, 229–231, 54 C.M.R. 549, 556–558, 2 M.J. 86, 92–94 (1977), a trial defense counsel must be present at any such interview to properly assist his client. Finally, counsel point to numerous portions of the review which they feel demonstrate the specific evils of this procedure—in particular the potential adverse effects for Airman Hill should he

1. Copies of this paragraph are attached to this opinion as Appendices IA (change 1 to the regulation which was in effect at the time of this case) and IB (change 2 to the regulation which is currently in effect). We have been informed that although the other services conduct such interviews, they do not do so pursuant to a mandatory regulatory scheme.

2. The government acknowledges that matters developed in such an interview and incorporated into the review of the staff judge advocate are subject to rebuttal and explanation under the rule set forth in *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975).

3. The letter from Captain Court, the assistant trial defense counsel, is attached as Appendix II. Captain Court, in addition to his participation in the various phases of the trial, handled all of the post-trial matters, including reviewing and responding to the matters contained in the post-trial review, seeking his client's release from confinement, and requesting to be present to assist his client at any post-trial interview.

4. The response from Captain Davidson is attached as Appendix III. His comment on this question to the convening authority is set forth in its entirety below:

(paragraph 46f, Post-Trial Review)
   f. *Refusal to Allow Counsel to Attend Clemency Interview:*
   By letter dated 18 November 1975 Captain H. Leonard Court, counsel for the accused, indicated his desire to be present during the post-trial clemency interview. A post-trial clemency interview is not a stage of the proceeding wherein an accused has a right to counsel. By letter dated 24 November 1975, I denied Captain Court's request to avoid the possibility that the presence of a third person would frustrate the purpose of the interview.

5. *United States v. Simpson* (A.C.M.R.1976) (page 47, *infra*.). A copy is attached as Appendix IV.

6. In *United States v. McOmber*, 24 U.S.C.M.A. 207, 209, 51 C.M.R. 452, 454, 1 M.J. 380, 382 (1976), we held that,
   [o]nce an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel reasonable opportunity to be present renders any statement obtained involuntary under Article 31(d) of the Uniform Code [of Military Justice].

choose not to speak with the interviewer,[7] and the adverse inferences drawn by the interviewer/reviewer from Airman Hill's insistence on asserting his innocence.[8] Counsel conclude that such a situation is counter productive to the right of an accused to plead not guilty, and places the accused in the untenable and unenviable position of suffering adverse consequences from a decision on his part to either remain silent or to continue to profess his innocence.

■■■ Analysis of the Code and Manual for Courts-Martial supports this observation by Judge Cook of the Army Court of Military Review in *United States v. Simpson, supra:*

> The practice of conducting a post-trial interview with convicted personnel appears to be widespread, though there is no specific reference to such a procedure in the Uniform Code of Military Justice, the Manual for Courts-Martial, United States, 1969 (Revised edition), or in Army regulations.

This practice was apparently developed to secure as much background information as possible on an individual accused in order to assist the convening authority in determining the propriety of clemency and the rehabilitative potential of the individual. *United States v. Fleming.*[9] The Board of Re-

---

**7.** As can be seen from the regulation in question, the post-trial interview is required in cases such as this one; although the accused presumably can refuse to answer the questions of the interviewer, counsel for the appellant argue that adverse consequences would follow from the notation in the post-trial review indicating such a choice on the part of the accused. In fact, the reviewer in this case, Captain Davidson, expressly noted in paragraph 47 that he advised Airman Hill that the information sought should be given "voluntarily" and "if he declined to give the information the effect such nondisclosure would have upon him."

**8.** The interviewer/reviewer set forth his impressions in paragraph 47i of the review. Clearly one reason for his ultimately unfavorable recommendation as to clemency and restoration (paragraph 48) as well as his unfavorable overall impression was the accused's persistence in maintaining his innocence. In fact, he relied upon this factor not only in his recommendation against any clemency, but also as set forth below, as part of his basis for attacking clemency recommendations from prison personnel who had observed Airman Hill from the time of his pretrial incarceration in July 1975 through the time of the interview.

> i. *Impressions and Evaluation of the Interviewing Officer:*
> During the course of the interview A1C Hill was calm and courteous and his appearance was neat. He spoke in a soft, pleasant, almost inaudible voice. At the time of the interview, the record of trial had not been typed and I was not familiar with the details of the case. During the interview, it was my impression that he would tell me whatever he thought might sell.
> Notwithstanding the overwhelming evidence in the record of trial which puts him at the scene of the offense alleged, the accused denied to me that he was ever in the laundry room on 14 July 1975. Perceiving him to be

> totally lacking in any sense of regret for his actions—except for the fact that he was caught—I do not view A1C Hill as an appropriate subject for clemency. I disagree with TSgt Mercado's view that relatively short term good conduct in an atmosphere which leaves little choice evidences personal discipline on the part of the accused. Nor do I agree that it is contrary to Air Force policies to dishonorably discharge one found guilty of rape.
> In addition to the rather obvious problem of drawing adverse inferences from protestations of innocence, two additional problems are apparent. First, as set forth in Airman Hill's letter of rebuttal to the convening authority following the post-trial clemency evaluation, "the relatively short term" that TSgt Mercado had evaluated the appellant had been four months, as opposed to the forty minutes of interviewing that Captain Davidson relied upon in drawing his conclusion. Secondly, Captain Court, the defense counsel who prepared the *Goode* rebuttal to the review, was severely hampered in effectively rebutting these comments as he had been denied the opportunity to be privy to the questions and actual interviewing techniques utilized to develop the "impressions" in question.

**9.** *United States v. Fleming*, 9 C.M.R. 502, 506 (A.B.R.1953) *reversed and remanded on another issue*, 3 U.S.C.M.A. 461, 13 C.M.R. 17 (1953), further reviewed at 14 C.M.R. 249 (A.B.R. 1953). The Board of Review relied upon the Letter, JAGO, Subject: "Form for Reviews of Staff Judge Advocates," (June 4, 1951), as support for its conclusion that these interviews were necessary to aid the convening authority in exercising his discretion under Article 64, Uniform Code of Military Justice. Upon review following certification by the Judge Advocate General, this Court per Chief Judge Quinn reversed the decision on the basis that the

view in *Fleming* determined that warnings under Article 31 should not be given because the purpose of the interview was to obtain the accused's cooperation and to get him to disclose matters "theretofore unknown or unavailable." [10] The board concluded that if Article 31 warnings were given, "the freedom of the interview" might be restricted and the accused might "clam up." [11] Although we conclude that Article 31 warnings are not required in this instance, we do so because, in our view, nothing in the language of the statute imposes a duty to give these warnings in an interview following trial where the purpose of the interview is not to produce incriminating evidence against an accused. [12]

This Court in a series of three-judge opinion decisions developed a supporting basis for the conduct of post-trial interviews and established the few existing limitations on their use. In *United States v. Coulter*, 3 U.S.C.M.A. 657, 14 C.M.R. 75 (1954), the

Court again sustained the use of the post-trial interview with little comment, as it had in *Fleming*, and concluded that fairness required that the reviewer/interviewer could not be the trial counsel. Shortly thereafter, in *United States v. Clisson*, 5 U.S.C.M.A. 277, 17 C.M.R. 277 (1954), the Court reaffirmed its position that the interviewer could not be a party to the trial. Judge Brosman in a separate opinion commended the general concept of a post-trial interview because of the importance of getting a "complete picture of the accused" for the convening authority prior to action under Article 64. [13] Finally in *United States v. Lanford*, 6 U.S.C.M.A. 371, 20 C.M.R. 87 (1955), the Court relied upon *Coulter* and *Clisson* to determine that the convening authority could go to any source for information which would assist him in determining a just sentence because of the broad powers given him under Article 64. [14] After

Board of Review had applied the wrong remedy to the error in question: use of testimony by an assistant staff judge advocate as to statements made by the accused to him during the course of a post-trial interview from an earlier case to establish the prosecution's burden on the question of specific intent in a subsequent trial. Agreeing tersely that the use of such testimony was error, the Court concluded that the error had been ameliorated by the finding below that the accused was guilty of only the lesser included offense which did not require the specific intent in question, and hence, ordered that finding reinstated.

**10.** *United States v. Fleming, supra*, 9 C.M.R. at 506.

**11.** *Id. Accord United States v. Collier*, 26 C.M.R. 529 (A.B.R.1958); *United States v. Powell*, 26 C.M.R. 521 (A.B.R.1958).

**12.** It should be abundantly clear, as recognized by the government counsel, that nothing said by an individual during the course of the post-trial interview can be utilized to support the convening authority's action as to *findings*. As stated above we conclude that the rule set forth in *McOmber* will not apply to the post-trial interview; however, the fact that Article 31 by its language is inapplicable does not dispose of the question of whether an individual has the right to remain silent. We believe that the essence of the post-trial interview is that it is a volitional act by the individual, and accordingly, the only way to insure meaningful compliance with this "voluntary" character is to ad-

vise this individual of his right to either participate or to remain silent. We, therefore, will require that the interviewer advise each individual prior to the beginning of any such interview of the purpose of the interview, the various uses and ramifications flowing from his answers, and his right not to participate, i. e., to remain silent.

We have been made aware of the recent *Army Lawyer* article "Reappraising the Legality of Post-Trial Interviews", D.A.Pam. 27–50–55, pp. 12–17 (July 1977), and the opinion expressed by its author, Captain Lederer, that Article 31 must apply to this situation. We reject this position not only because one of its premises is that the accused's statements during the interview can support the trial court's findings to be approved (*Id.* at 13), but also because the statute was not meant to cover this procedure where the individual is neither a suspect, nor being asked to produce incriminating evidence against himself. We feel that the advice we require to be given, and the assistance of counsel which we make mandatory elsewhere in this opinion, more than satisfactorily reach the result desired by Captain Lederer without unduly straining the language of Article 31.

**13.** *United States v. Clisson*, 5 U.S.C.M.A. 277, 281, 17 C.M.R. 277, 281 (1954) (Brosman, J., concurring).

**14.** *See United States v. Morrison*, 3 M.J. 408, 409 n. 13 (C.M.A.1977) (Fletcher, C. J., concurring in the result) for a detailing of Congressional intent underlying this Article.

examining Article 38(c) it was determined that said provision contemplated more than presentation by the defense counsel of a written brief, and that oral presentations, including those in the form of a personal interview with the convening authority's legal representative, were within the intent of Congress. Concluding that the convening authority was not limited by the evidence of record in determining whether to reduce the sentence, the Court sanctioned the inclusion of matters developed in post-trial interviews, or elsewhere, in the post-trial review with the express proviso that the accused be given a fair and reasonable opportunity to rebut or explain any matter detrimental to him.[15]

Thus, the concept of the need for a post-trial interview to insure compliance with Article 64,[16] as well as an adoption of the practice that the interview would be conducted by the convening authority's le-

gal officer and made part of the post-trial review,[17] developed without specific codal support or authority. Recognizing that Article 64 indeed gives the convening authority wide discretion in sentencing matters, and that Article 38(c) allows the trial defense counsel great latitude in how *he* chooses to present matters to the convening authority after trial, we cannot find support in either provision for the proposition developed in *Lanford* that the practice of counselless interviews of the accused is either necessary or proper. Significant distinctions between the clemency powers of the convening authority under Article 64, and the nature of the opinion of the staff judge advocate required by Article 61 compel the conclusion that despite the potential merits of preparing a full sentencing report for the convening authority, it is not within the functions of the post-trial interview.[18] Further difficulties warrant discussion.

15. In later decisions this rule was relaxed by holding that no opportunity to rebut or explain need be afforded to an accused when either the material was provided by him through an interview, or when the staff judge advocate or interviewer was offering comments or opinions as to the accused based on these interviews. *See United States v. Guinn*, 12 U.S.C.M.A. 632, 31 C.M.R. 218 (1962); *United States v. Young*, 9 U.S.C.M.A. 452, 26 C.M.R. 232 (1958); *United States v. Jackson*, 9 U.S.C.M.A. 298, 26 C.M.R. 78 (1958). This rather circular reasoning was put to rest by the Court in *Goode* which clearly re-established that an accused must have the opportunity to rebut or explain those adverse matters. *See United States v. Vara*, 8 U.S.C.M.A. 651, 25 C.M.R. 155 (1958). Further protection is afforded by requiring the convening authority to state his reasons should he choose to pursue a different course of action than that suggested by his staff judge advocate. *United States v. Keller*, 23 U.S.C.M.A. 545, 50 C.M.R. 716, 1 M.J. 159 (1975).

16. The Court in *United States v. Lanford*, 6 U.S.C.M.A. 371, 381, 20 C.M.R. 87, 97 (1955), was clearly, in part, relying upon the then existing practices of the Army and Air Force. The practice has been reaffirmed with little or no further comment. *See United States v. Nees*, 18 U.S.C.M.A. 29, 39 C.M.R. 29 (1968); *United States v. Hurt*, 9 U.S.C.M.A. 735, 27 C.M.R. 3 (1958); *United States v. Rehorn*, 9 U.S.C.M.A. 487, 26 C.M.R. 267 (1958).

17. The question of whether such matters are necessary to satisfy the requirements of Article 64 entails a different inquiry from whether

these matters are properly includable within the post-trial review under Article 61. *See United States v. Morrison, supra* (Fletcher, C. J., concurring in the result).

18. Many of the problems found in the present military justice system lie in the sentencing procedures currently being practiced. Examination of relevant portions of the ABA Standards Relating to the Administration of Criminal Justice reveals several critical considerations. First, in many cases, the jury, not the judge, sentences the accused. The Standards, we feel correctly, properly postulate that "[a]uthority to determine the sentence should be vested in the trial judge and not in the jury." ABA Standards, Sentencing Alternatives and Procedures § 1.1 (1968) [hereinafter cited as Sentencing Standards]; ABA Standards, The Function of the Trial Judge § 8.1 (1972). Second, and more importantly, the judge who sentences in a military case does so without the benefit of the major vehicle for providing the needed information for an informed decision— the presentencing investigation report. In Sentencing Standards, §§ 4.1–4.2 (1968), the need is discussed, and its express purpose and contents are set forth in ABA Standards, Probation §§ 2.2–2.3 (1970). These reports are prepared by an agency divorced from the trial proceedings, and normally are not prepared until after an adjudication of guilt. This, of necessity, causes a truly bifurcated trial proceeding, but the importance and value both to the trial judge and litigants of having this report makes this process laudable.

This Court has not addressed the questions of whether these post-trial interviews are within the adversary process, and whether or not the presence of counsel is necessary. The lower courts in a series of decisions concluded that these procedures need not necessarily be governed by the standards of due process,[19] and that these interviews were not adversary proceedings.[20] The Army Board of Review in *United States v. Bohaman*, 39 C.M.R. 301, 304 (A.B.R.1968), concluded that the

> [p]resence of counsel at such an interview might well inhibit a full, free and frank discussion between the accused and the interviewer which could result in a favorable recommendation for clemency.[21]

We recognize that a full scale hearing is not required to conduct a post-trial interview;[22] yet inherent in the post-trial duties given trial defense counsel in *Palenius* is the duty

to fully assist the client at any such interview. Given the nature of the process, and the all too well recognized fact that these interviews are often utilized to discern damaging (albeit relevant) information which forms the basis for the opinion of the reviewer as to clemency,[23] we find this situation adversary in character and see the need for the assistance of counsel. We therefore, conclude that should a post-trial interview be conducted with an accused, he is entitled, absent express waiver,[24] to the presence and assistance of counsel. We fail to perceive how the presence of counsel will, in any meaningful sense, "inhibit a full, free and frank discussion between the accused and the interviewer",[25] and thereby preclude a favorable recommendation for clemency. Instead the counsel can assist his client by adequately preparing him for the type of inquiry which should occur and

In addition to allowing the judge and counsel to be more fully informed (under the provisions of Sentencing Standards, §§ 4.3–4.5, counsel are privy to the matters contained in the report and are given opportunity to contest the accuracy of the report and prepare rebuttal or explanation), the sentence hearing under such a system provides the reviewing authorities with a more detailed and reasoned basis for evaluating the decision of the judge. (These hearings would be recorded and made part of the record. *Id.*, §§ 5.7) This is true not only because of the expanded amounts and sources of material, but also because of the expanded role of both counsel in the hearings as set forth in Sentencing Standards, § 5.3.

This concept of having a completely neutral, fact-finding agency prepare a report for the sentencing phase of the trial, when coupled with the participation of counsel, and the development of a record which can be reviewed by the appellate authorities, is in our view far preferable to the system currently utilized by the military. Adoption of such a system would eliminate much of the need cited as the underlying basis for the current procedures, and would invariably produce a more informed decision on sentencing without creating questions as to the identity of and/or the propriety of the basis for the convening authority's action under Article 64. We urge that the legislation necessary to implement these procedures be strongly considered by Congress.

19. *United States v. Albert*, 31 C.M.R. 326 (A.B.R.1961).

20. *United States v. Canady*, 34 C.M.R. 709 (N.B.R.1964).

21. This is ironically virtually the identical language cited by Captain Davidson in denying the request for the presence of counsel. We note that even in the analysis offered in *Lanford* which forms the basis for the board's decision, there is no suggestion that the presence of counsel would "frustrate" the purpose of such an interview. As noted, the question was never addressed by the Court, and given its stated reliance upon Article 38(c), and its stated opinions that such interviews would serve only to help the accused, it is doubtful that a rule barring the presence of counsel should have developed on the basis utilized in *Lanford*. (The Navy Board of Review in *Canady* simply held that although the presence of counsel might well be desirable, it was not mandatory.)

22. *See United States v. Goode, supra.*

23. This is all too graphically demonstrated by the review in this case. *See* note 7.

24. Certainly an individual can affirmatively waive this right, assuming it is done in a conscious, knowing, and intelligent fashion. *Faretta v. California*, 422 U.S. 806, 835–6, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). *See United States v. Davis*, 3 M.J. 430 (C.M.A.1977).

25. *United States v. Bohaman*, 29 C.M.R. 301, 304 (A.B.R.1968).

prevent the use of improper questions and/or inferences which might be drawn from the response of his client.

■ This assistance is necessary not only to satisfy the post-trial duties of the trial defense counsel under *Palenius*, but also to allow meaningful rebuttal to the inclusion of such matters in a post-trial review under *Goode*. We find it difficult to accept that trial defense counsel can be expected to rebut and explain inferences drawn and opinions expressed about his client which are based upon an interview with that client where counsel's presence was barred.[26]

The decision of the United States Air Force Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Air Force for remand to a convening authority for a new review and action.

Judge PERRY concurs.

### APPENDIX IA

AFM 111–1(C1)   25 August 1975

RECOMMENDATIONS:

The foregoing review constitutes this reviewer's summary of the evidence, opinion as to the adequacy and weight of evidence, effect of any error or irregularity respecting the proceedings, and recommendations as to the action to be taken with regard to the findings and the sentence. As the (convening authority)

(officer exercising general court-martial jurisdiction) in this case, you are empowered to weigh the evidence, judge the credibility of the witnesses and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses. Before approving a finding of guilty, you must determine that such finding is established to your satisfaction beyond a reasonable doubt by competent evidence properly admitted before findings. In acting on the findings and sentence, you are empowered to approve only such findings of guilty and the sentence, or such part or amount of the sentence, including a sentence which is changed from, but is lesser than, that adjudged by the trial court, as you find correct in law and fact and as you in your discretion determine should be approved.

e. To provide uniform statistical information required by HQ USAF, AF Form 242, Staff Judge Advocate's Review of Trial by Court-Martial, is prescribed for use as the first page of all staff judge advocate reviews, including those involving acquittals.

f. Except for cases involving acquittals, the review must also contain sufficient information about the civilian background, military service, physical and mental capacity, character and personality of the accused, to provide an adequate basis for decisions as to clemency and possibilities of rehabilitation (see para 7–5 below). The combat record and overseas record of service, if any, of the accused are particularly impor-

---

26. I am of the opinion as set forth in my separate concurrence in *United States v. Morrison, supra,* that the staff judge advocate is the "chief counsel for the given command among whose various functions include the responsibilities of being the chief prosecutor." I, therefore, feel that under the provisions of EC 7–18 and DR 7–104, ABA Code of Professional Responsibility, that it is not properly within the scope of that office for either the staff judge advocate, or one acting in his stead, to conduct this interview, especially when, as here, the request for the presence of counsel is denied.

In addition to the conflict presented by the above-mentioned provisions of the Code of Professional Responsibility, I feel that inclusion of matters developed during such interviews, regardless of the identity of the reviewer, do not belong in the post-trial review because of the nature of the provisions under Article 61 as detailed in my concurrence in *Morrison*.

As set forth in note 18, the preferable situation is to have a full and detailed sentencing report and investigation presented to the trial judge as part of the sentencing phase of the trial, and thus, give counsel ample opportunity to present his case as to sentencing to the judge *on the record* which facilitates review by the convening authority and the appellate tribunals. It also should serve to prevent most of the present difficulties of potential conflicts inherent in the dual role of interviewer and reviewer, the abuses presented in this review, and the hindering of counsel from fully pursuing their post-trial duties for their clients.

tant (AFR 111–5). When an accused is transferred to a confinement facility under another general court-martial authority, ordinarily a copy of the review, but not the record of trial, is transmitted. Therefore, if a psychiatric examination of the accused was obtained, the results should (in addition to the notation on page one of the review) be summarized in the body of the review.

g. If one or more of several accused tried at a joint or common trial by special court-martial receives a bad conduct discharge, the staff judge advocate to the general court-martial authority should indicate in his review the action taken by his headquarters with respect to the findings or sentence adjudged as to any accused who was not sentenced to punitive discharge.

h. Mandatory items required by MCM, 1969 (Rev), para 86b, must be included in the staff judge advocate's review, unless there was an acquittal of all charges. Specific comment on the accused's sanity is one of the required items.

* i. In some cases it is desirable to advise the convening or supervisory authority in detail of his ability to commute the sentence to a different but lesser form of punishment. This is particularly true when a punitive discharge, together with a short period of confinement or no confinement, has been adjudged and a practical problem arises with regard to designation of the 3320th Retraining Group as the place of confinement (see para 7–19d). Additionally, in these and other cases, various factors affect the remaining period of confinement, e. g., the time required to transcribe a lengthy record of trial, the travel time required to transport the accused from a location overseas to the Retraining Group, or, in case of a rehearing, the credit which must be given the accused for certain of the time between the first and subsequent trials (see UCMJ, Article 57; MCM para 89c(8); *United States v. Blackwell*, 19 U.S.C.M.A. 196, 41 C.M.R. 196 (1970); *Reed v. Ohman*, 19 U.S.C.M.A. 110, 41 C.M.R. 110 (1969)). In such situations, the discussion in the review should include reasons for and against commutation and a recommendation on the subject.

j. A staff judge advocate, in his review, may recommend reassessment of the sentence, but the reassessment itself, and any modification of the sentence resulting therefrom, are the prerogatives of the convening or supervisory authority, not the function of the staff judge advocate.

* 7–4. Availability to Accused of Staff Judge Advocate's Review. A copy of the review must be served on counsel for the accused. See *U. S. v. Goode*, 1 M.J. 3 (4 April 1975) for further details in this regard.

7–5. Clemency Evaluation:

a. Court-martial sentences are reviewed for clemency by the convening authority, the officer exercising general court-martial jurisdiction, the Court of Military Review, The Judge Advocate General, and the Secretary of the Air Force. In order that the accused may be given individual consideration, each person responsible for reviewing his sentence for clemency must have available detailed information bearing thereon. Since an independent clemency investigation at each appellate level is not practicable, all available clemency information should be compiled at the place where trial was held, in such form that it can ultimately be made a part of one document—the review of the staff judge advocate. In addition to furnishing clemency information to commanders acting on the sentence, the clemency evaluation and the staff judge advocate's review constitute important sources of information upon which future clemency action may be based.

* b. Accordingly, a formal report of clemency evaluation must be prepared in every case of conviction by a general court-martial and in every special court-martial where the sentence includes a bad conduct discharge or confinement over 1 month. No post-trial review or advice in these cases should ever indicate that a clemency study is unnecessary or has not been made.

(1) When a formal staff judge advocate's review is prepared, it is desirable that the

reviewer himself conduct the interview with the accused and incorporate the report directly into the review, appending supporting documents, including individual evaluations (c(3) below). If this is not practicable for any reason, a separate clemency report will be prepared (b(2) below) and will be attached to all copies of the review. The degree to which such a separate report and the evaluations referred to in c(3) below are summarized in the review or incorporated by reference is a matter of sound discretion based upon the requirement of submitting a complete, fair, coherent, and easily assimilated clemency evaluation. Failure to fully reflect these matters in the review may be grounds for reversal.

(2) When there is not to be a formal SJA review or when a separate report is used with the review under b(1) above, the interview will be conducted and the report will be prepared by a judge advocate or by an attorney designated by the staff judge advocate.

(3) In any case, the person who conducts the interview and prepares the report must be one without prior disqualifying participation in the case or trial (see *United States v. Nees*, 18 U.S.C.M.A. 29, 33, 39 C.M.R. 29, 33 (1968)).

c. The extent of the clemency report will be determined by sound professional judgment in light of the accused's situation and background and the circumstances of the case. In every case the person preparing the report should interview the accused (d, below) and summarize the interview in the report; if this interview is impossible, the reason therefor will be stated. In addition, in every case in which the sentence includes a punitive discharge or confinement at hard labor for 6 months or more, or where the accused will be confined at a retraining group or disciplinary barracks, the following will be included as a minimum:

(1) A concise summary of evidence introduced during the trial concerning clemency.

(2) A report of the result of any psychiatric examination which had been made.

(3) In addition to the evaluation of the interviewer, reports of evaluations made on AF Form 138, Post-Trial Clemency Evaluation, by the correction officer, the accused's commander and first sergeant, and the chaplain, if he elects to submit an evaluation. Other persons having knowledge of the accused's restoration potential may also submit evaluations.

(4) Information concerning the accused's civilian background, including place of birth and permanent home address, civilian employment and education, marital status, number and ages of dependents, civilian criminal record, record of juvenile delinquency, etc.

(5) Information pertaining to the accused's prior military service, including dates of service, type of discharge, grade at time of discharge, overseas service (including names of campaigns or battles in which accused participated), decorations or awards, and disciplinary action taken during previous and current periods of service, including convictions by courts-martial, Article 15 actions, civil convictions, etc. When possible, the accused's claim to outstanding combat service should be verified. If such information cannot be verified, a statement to that effect should be included in the staff judge advocate's review or the report.

d. Before interviewing the accused, the person preparing the report should advise him of its purpose. The interview should be concerned with the accused's personal history, his accomplishments, difficulties, future plans, reactions to his present situation, and any explanation for committing the offense or offenses of which he has been convicted. During the interview a thorough explanation should be made to the accused of the effect and consequences of a punitive discharge, if applicable. An attempt should be made to secure from the accused a definite expression of his attitude toward rehabilitation and further service. The accused should be informed of the restoration policies of the Air Force and of the rehabilitation program.

e. The interviewer will state his conclusions in the review (b(1) above) or in his

separate report (b(2) above), including his evaluation of the accused's character and attitude and his views regarding the accused's suitability for such of the following as are appropriate to the sentence: clemency, retraining, restoration to duty, and place of confinement. When there is a formal SJA review and someone other than the reviewer conducted the interview, the reviewer will cover the same points, including his reason for any disagreement with the recommendations of the interviewer.

f. The interviewer (and the reviewer, if a different person) will briefly and accurately state in the text of his report (and review, if separate) the recommendation of each person submitting an evaluation, in addition to attaching copies of the AF Forms 138. If he does not recommend clemency and clemency has been recommended by anyone submitting an evaluation, he will state his rationale for not doing so. Unsupported conclusions of the interviewer, the reviewer, or the staff judge advocate, without more, do not counterbalance the recommendations of personnel in a position to know the accused best.

g. It is error for a convening authority to consider, in his deliberations on the sentence, adverse matter from outside the record without the accused having been offered an opportunity to rebut or explain that matter (*United States v. Griffin*, 8 U.S.C.M.A. 206, 24 C.M.R. 16 (1957); *United States v. Vara*, 8 U.S.C.M.A. 651, 25 C.M.R. 155 (1958); *United States v. Chandler*, 22 U.S.C.M.A. 73, 46 C.M.R. 73 (1972)). Staff judge advocates must insure that the accused is fully apprised of, and afforded an opportunity to rebut, all derogatory information from sources outside the record of trial which will be considered by the convening authority in acting on the sentence. Use the following procedures:

* (1) Following trial, if there is a separate clemency report, give the accused (and his counsel, if feasible) a copy of the report and all attachments. If the clemency report is included in the review or if there is relevant information from outside the record (for example, that the accused has breached restriction, escaped from confinement, is absent without leave), give the accused (and his counsel, if feasible) a copy of the review and relevant attachments. When these copies of the report, the review, or both are furnished, the accused will execute a properly dated receipt and a statement as to whether he desires to submit any matter in denial, explanation, or rebuttal. If a separate clemency report is completed at a place distant from a general court-martial authority which will prepare a formal SJA review, the foregoing should be accomplished before the report is forwarded to the general court-martial authority. See also para 7–4 regarding separate requirement to serve copies of reviews on accused's counsel.

(2) Any post-trial document submitted by the accused in rebuttal or on his own behalf and the substance of any oral statements made by him to the post-trial interviewer should be incorporated in or appended to the report (or review). They must be brought to the attention of the convening authority when he takes action and forwarded with the file.

(3) If the accused by his own action, such as absence without leave, makes it impossible to comply with any part of (1) or (3), do not delay action on the case, but state the circumstances of the impossibility in the report or the review or in a separate document forwarded with the file. If the impossibility is the result of absence without leave, the statement of circumstances will be limited to those reported in AF Form 2098, Duty Status change.

h. If there is a formal SJA review, the clemency report will be presented to the commander with or as part of the review, with the record, for consideration in deciding his action. If there is no formal SJA review, the clemency report will be presented to the commander with the record.

i. The process of evaluating a record of trial necessarily results in the forming of an opinion, but does not warrant the staff judge advocate in entertaining any personal bias or prejudice toward an accused. The staff judge advocate should, as part of his

official duties, arrive at an opinion as the result of impartial evaluation and in a detached and dispassionate manner. If unfavorable conclusions are reached, or if adverse recommendations are made after an opinion is reached in this manner, there should be no suggestion that the staff judge advocate entertained a personal bias, hostility, or prejudice toward the accused. The use of the words "bias" or "prejudice" connotes a personal interest and state of mind which a staff judge advocate should not entertain toward the disposition of a particular case. If he does entertain a personal feeling, he should disassociate himself from the case.

7-6. Matters Outside the Record of Trial. Generally.

APPENDIX IB

AFM 111–1(C2)   8 October 1976

7–5.   Clemency Evaluation:

a. Court-martial sentences are reviewed for clemency by the convening authority, the officer exercising general court-martial jurisdiction, the Court of Military Review, The Judge Advocate General, and the Secretary of the Air Force. In order that the accused may be given individual consideration, each person responsible for reviewing his sentence for clemency must have available detailed information bearing thereon. Since an independent clemency investigation at each appellate level is not practicable, all available clemency information should be complied at the place where trial was held, in such form that it can ultimately be made a part of one document—the review of the staff judge advocate. In addition to furnishing clemency information to commanders acting on the sentence, the clemency evaluation and the staff judge advocate's review constitute important sources of information upon which future clemency action may be based.

* b.   Accordingly, a formal report of clemency evaluation must be prepared in every case of conviction by a general court-martial and in every special court-martial where the sentence includes a bad conduct discharge or where the accused will be confined at the 3320th Correction and Rehabilitation Group or the United States Disciplinary Barracks (see chapter 5, AFR 125–18). No post-trial review or advice in these cases should ever indicate that a clemency study is unnecessary or has not been made.

(1) When a formal staff judge advocate's review is prepared, it is desirable that the reviewer himself conduct the interview with the accused and incorporate the report directly into the review, appending supporting documents, including individual evaluations (c(3) below). If this is not practicable for any reason, a separate clemency report will be prepared (b(2) below) and will be attached to all copies of the review. The degree to which such a separate report and the evaluations referred to in c(3) below are summarized in the review or incorporated by reference is a matter of sound discretion based upon the requirement of submitting a complete, fair, coherent, and easily assimilated clemency evaluation. Failure to fully reflect these matters in the review may be grounds for reversal.

(2) When there is not to be a formal SJA review or when a separate report is used with the review under b(1) above, the interview will be conducted and the report will be prepared by a judge advocate or by an attorney designated by the staff judge advocate.

(3) In any case, the person who conducts the interview and prepares the report must be one without prior disqualifying participation in the case or trial (see *United States v. Nees*, 18 U.S.C.M.A. 29, 33, 39 C.M.R. 29, 33 (1968)).

* (4) Privacy Act Advice. Under the Privacy Act of 1974, the accused is entitled to certain formalities before participating in the interview.

(a) He is entitled to receive the following advice:

1. The authority for collection of the information,

2. The principal use to be made of the information,

3. The routine uses to be made of the information, and

4. That it is voluntary that he provide the information and the effect on him if he does not provide the information.

(b) The accused is entitled at his request to receive these in writing, and the interviewer must have a written copy available to give him. However, a copy need not be given him if he does not request it, and there is no need to have him receipt for a copy.

(c) The required advice, in a form appropriate to deliver to him, appears in figure 7–1. A supply of the forms may be provided by duplicating figure 7–1 by any suitable photocopy method.

c. The extent of the clemency report will be determined by sound professional judgment in light of the accused's situation and background and the circumstances of the case. In every case the person preparing the report should interview the accused (d, below) and summarize the interview in the report; if this interview is impossible, the reason therefor will be stated. In addition, in every case in which the sentence includes a punitive discharge or confinement at hard labor for 6 months or more, or where the accused will be confined at the 3320th CR6 or a disciplinary barracks, the following will be included as a minimum:

* (1) A concise summary of evidence introduced during the trial concerning clemency. Inclusion of this material increases the utility of the report and is essential in clemency reports when required in non-BCD special courts-martial (where there is no formal staff judge advocate's review). In cases where there is to be a review and it is impracticable to summarize the evidence regarding clemency in the report, this item may be limited to a statement that a summary is impracticable and an identification of the type(s) of clemency evidence which were received (that is, testimony from supervisors, OERs/APRs, letters from former employers/acquaintances, etc.).

* (2) A report of the result of any psychiatric examination which had been made.

See para 7–3k regarding inclusion of summary of mental health evaluation; if applicable, this should be included in the clemency report, since it bears on the question of whether the accused should be placed in the rehabilitation program.

(3) In addition to the evaluation of the interviewer, reports of evaluations made on AF Form 138, Post-Trial Clemency Evaluation, by the correction officer, the accused's commander and first sergeant, and the chaplain, if he elects to submit an evaluation. Other persons having knowledge of the accused's restoration potential may also submit evaluations.

(4) Information concerning the accused's civilian background, including place of birth and permanent home address, civilian employment and education, marital status, number and ages of dependents, civilian criminal record, record of juvenile delinquency, etc.

(5) Information pertaining to the accused's prior military service, including dates of service, type of discharge, grade at time of discharge, overseas service (including names of campaigns or battles in which accused participated), decorations or awards, and disciplinary action taken during previous and current periods of service, including convictions by courts-martial, Article 15 actions, civil convictions, etc. When possible, the accused's claim to outstanding combat service should be verified. If such information cannot be verified, a statement to that effect should be included in the staff judge advocate's review or the report.

d. Before interviewing the accused, the person preparing the report should advise him of its purpose. The interview should be concerned with the accused's personal history, his accomplishments, difficulties, future plans, reactions to his present situation, and any explanation for committing the offense or offenses of which he has been convicted. During the interview a thorough explanation should be made to the accused of the effect and consequences of a

punitive discharge, if applicable. An attempt should be made to secure from the accused a definite expression of his attitude toward rehabilitation and further service. The accused should be informed of the restoration policies of the Air Force and of the rehabilitation program.

## APPENDIX II

DEPARTMENT OF THE AIR FORCE
HEADQUARTERS UNITED STATES AIR FORCE
USAF JUDICIARY AREA DEFENSE COUNSEL
LACKLAND AIR FORCE BASE, TEXAS   78236                    [SEAL]

REPLY TO
ATTN. OF: AFJADC/Captain Court/Stop 42                    18 November 1975

SUBJECT: United States v. Hill—Post Trial Clemency Interview

TO: JAM/Lt Col Robert L. Bates

When the post trial clemency interview of A1C Cecil L. Hill, Jr., is conducted, I would like to be present. Could you please notify me when the interviewer has been selected so that I can make arrangements for a mutual convenient time? Thank you for your time and co-operation.

(s) H. LEONARD COURT, Captain, USAF
     Area Defense Counsel

## APPENDIX III

DEPARTMENT OF THE AIR FORCE
HEADQUARTERS AIR FORCE MILITARY TRAINING CENTER (ATC)
LACKLAND AIR FORCE BASE, TEXAS   78236                    [SEAL]

JAM                                                       24 November 1975

United States v. Hill—Post-Trial Clemency Interview (Your Ltr, 18 Nov 75)

AFJADC/Capt Court

1. Your letter requesting notification of post-trial clemency interviewer designation and expressing your desire to be present at the interview has been referred to me by Lt Col Robert L. Bates. I have been designated clemency interviewing officer.

2. A1C Hill will be interviewed by me on Tuesday, 25 November 1975, in the Lackland AFB Law Center beginning at 0900.

3. I have carefully considered your desire to be present during the interview. A clemency interview is intended to be a candid conversation between the interviewer and the accused wherein the accused may express himself freely and explain circumstances which relate to the exercise of clemency in his case. As you know, a clemency interview is not a hearing and not an adversary proceeding. An accused can only benefit from a clemency interview; he cannot be harmed.

4. In my estimation presence of either trial counsel or defense counsel during a clemency interview would alter the nature of the interview and frustrate its purpose. Accordingly, for the reasons given, you may not be present during my interview of A1C Hill.

5. Your letter and a copy of my response will be attached to the interview report.

(s) JOHN P. DAVIDSON, Capt, USAF
Assistant Staff Judge Advocate
Clemency Interviewing Officer

# APPENDIX IV

## UNITED STATES ARMY COURT OF MILITARY REVIEW

Before
BAILEY, COOK and DeFORD
Appellate Military Judges

### UNITED STATES

v.

Specialist Five ROY L. SIMPSON, 254–64–4126, US Army, Company A, 57th Signal Battalion (Corps), Fort Hood, Texas

SPCM 11744

14 APR 1976

Special Court-Martial Convened by Headquarters, III, Corps and Fort Hood, Fort Hood, Texas (R. D. Russell, Military Judge, alone)

Sentence adjudged 6 October 1975
Approved sentence: Bad-conduct discharge, confinement at hard labor for two months, forfeiture of $229.00 pay per month for two months, and reduction to the grade of Private E–1

Appellate Counsel for the Accused: CPT Theodore H. Watts, JAGC; MAJ Richard J. Goddard, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC

Appellate Counsel for the United States: Appearance waived

---

## OPINION OF THE COURT

COOK, Judge:

Appellant was tried and, contrary to his pleas, he was convicted of six acts of receiving bribes. These crimes violate Article 134, Uniform Code of Military Justice (UCMJ), (10 USC § 934). The trial judge who found him guilty also sentenced appellant, as noted above.

In his comments on the staff judge advocate's post-trial review [1] the trial defense counsel complained about the fact that a post-trial interview was conducted with the appellant without any prior notice to him as appellant's counsel.

1. Conducted in conformity with the mandate of *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975).

The practice of conducting a post-trial interview with convicted personnel appears to be widespread,[2] though there is no specific reference to such a procedure in the Uniform Code of Military Justice, the Manual for Courts-Martial, United States, 1969 (Revised edition), or in Army Regulations.[3] When the practice has been discussed by military appellate bodies, the justification for such an interview has been that it is designed to aid the "effectiveness of the system of appellate review with respect to clemency required by the Uniform Code of Military Justice, Articles 64, 66, 71 and 74. . . ."[4] These interviews have been likened to "the presentence investigation report available to civilian judges."[5] The United States Court of Military Appeals has repeatedly endorsed the concept of the post-trial interview to assist the convening authority in the exercise of his plenary clemency powers.[6]

There have, however, been attacks on the manner in which post-trial interviews have been conducted. One objection concerned the identity of the interviewer. The United States Court of Military Appeals has held that the interview may not be conducted by a party-in-interest to the trial.[7]

Another criticism was directed at the failure to advise the interviewee of his Article 31, UCMJ, rights. The Boards of Review have uniformly held that such advice is unnecessary, primarily because it would interfere with the underlying purpose of the interview, i. e., obtaining information on which to make a considered judgment concerning clemency.[8]

And still a third assault has been concerned with the fact that the interview is conducted without the presence of counsel. Again, the Boards of Review have held that, based on the rationale that presence of counsel would "strangle the practice,"[9] there is no mandatory requirement in military law for such representation.[10]

The terms of the alleged error in the instant case is at variance with those which constituted the aforementioned complaints, i. e., that appellant was interviewed without notice to counsel. It too would, however, seem to be subject to resolution by resort to the same reasoning employed by the Boards of Review in the Article 31 and earlier counsel cases. This Court is hesitant to make such a disposition of this issue principally because of the recent decision of the United States Court of Military Appeals in

---

2.  *See United States v. Fleming, infra,* for an Army case; *United States v. Canady,* 34 C.M.R. 709 (N.B.R.1964), for a Navy case and *United States v. Clisson, infra,* for an Air Force case, involving post-trial interviews.

3.  The opinion in *United States v. Fleming, infra,* cites to 1951 and 1952 JAGO letters on the subject.

4.  *United States v. Fleming,* 9 C.M.R. 502, 507 (A.B.R.1953), reversed and remanded on another issue 3 U.S.C.M.A. 461, 13 C.M.R. 17 (1953), further reviewed at 14 C.M.R. 249 (A.B.R. 1953).

5.  *United States v. Powell,* 26 C.M.R. 521, 524 (A.B.R.1958).

6.  *United States v. Nees,* 18 U.S.C.M.A. 29, 39 C.M.R. 29 (1968); *United States v. Hurt,* 9 U.S.C.M.A. 735, 27 C.M.R. 3 (1958); *United States v. Rehorn,* 9 U.S.C.M.A. 487, 26 C.M.R.

267 (1958); *United States v. Clisson,* 5 U.S.C. M.A. 277, 17 C.M.R. 277 (1954).

7.  *United States v. Clisson, supra; United States v. Nees, supra; but see United States v. Hurt, supra.* An early Board of Review case on this subject is *United States v. Carter,* 7 C.M.R. 785 (A.F.B.R.1953).

8.  *United States v. Fleming, supra; United States v. Collier,* 26 C.M.R. 529 (A.B.R.1958); *United States v. Albert,* 31 C.M.R. 326 (A.B.R. 1961); *see United States v. Powell, supra.*

9.  *United States v. Canady, supra,* 34 C.M.R. at 713 quoting from the dissent in *United States v. Clisson, supra.*

10.  *United States v. Canady, supra; United States v. Boheman,* 39 C.M.R. 301 (A.B.R. 1968).

*United States v. McComber*, 1 M.J. 380 (1976). In that opinion the court held "that once an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel reasonable opportunity to be present renders any statement obtained involuntary under Article 31(d) of the Uniform Code" Ms.Op. pg. 6.

While we recognize the factual and legal distinctions incumbent here, we nevertheless feel constrained to treat the failure to deal with trial defense counsel in the case *sub judice* as error and test for prejudice.[11]

The only statement appearing in the post-trial review that is attributed to the appellant that might be deemed detrimental is the following: "He stated that he realizes now that 'conning' people is wrong and will not get him ahead." As noted earlier, appellant was tried for accepting bribes. Whether his reference to "conning people" is directly related to these offenses, to which he plead not guilty, or to his conduct in court or to neither is ambiguous at best.[12]

Considering the state of the evidence, the number of acts for which he was convicted, and the moderate sentence appellant received, this Court is of the opinion that the convening authority's decision to approve the findings and sentence was uninfluenced by the inclusion of the quoted item in the post-trial review. Consequently, we find no prejudice.

We have also noted that the trial counsel argued for a sentence which would serve "as an effective deterrent of this sort of thing in the future by persons of like posi-

tion." A somewhat similar deterrence argument was condemned in *United States v. Mosely*, 1 M.J. 350 (decided 19 March 1976). We will cure the error by reassessing the sentence.

The findings of guilty are affirmed. Reassessing the sentence in light of *Mosely, supra*, and the entire record, the Court affirms the sentence.

Senior Judge BAILEY and Judge De-FORD concur.

COOK, Judge (dissenting):

I do not agree with the majority's condemnation of a post-conviction interview with an accused for sentence purposes, without the presence of his counsel. American Bar Association Standards, upon which the majority have often relied for guidance in other aspects of a criminal trial, recommend a probation report before sentence. The official commentary accompanying the standards sanctions the common practice of probation officers to interview the convicted accused without the presence of defense counsel. ABA Standards Relating to Sentencing Alternatives and Procedures, Informational Basis for Sentence, p. 200 (Approved Draft, 1968).

Among other things the commentary notes that the adversary mode is "not appropriate" for that part of the sentence proceeding (§ 4.1(a)), and that most probation reports "depend in large part on information acquired from the accused" (§ 4.2(a)). In fact, Victor H. Evjen, Assistant Chief of Probation, Administrative Office of the United States Courts, who was cited with approval in the ABA commentary (§ 4.2(b)), advises that, whenever possi-

---

11. Although the United States Court of Military Appeals in *United States v. McOmber, supra*, drastically altered the test for prejudice and applied its new test in that case because it was "satisfied . . . that the Government has had ample notice of the standard of conduct announced . . .," we will apply a less stringent test because these are almost untrolled waters.

12. "Con" as an adjective is defined in Webster's New World Dictionary of the American Language as "1. to swindle (a victim) by first gaining his confidence 2. to trick or fool, esp. by glib persuasion."

ble, the accused "should be seen more than once," and he should be encouraged "to give his own interpretation of the circumstances, motivations, and causal factors underlying" the offense of which he was convicted. Evjen, *Some Guidelines in Preparing Presentence Reports*, 37 F.R.D. 177, 178, 180 (1965). Further, in enumerating the responsibility of defense counsel in regard to sentence, the ABA Standards are significantly silent about counsel's attendance at an interview between the accused and the probation officer (§ 5.3, Duties of counsel). In *United States v. Coulter*, 3 U.S.C.M.A. 657, 660, 14 C.M.R. 75, 78 (1954), one of the cases now condemned by the majority as ill-founded, the Court noted with approval a commentator's analogy of the "probation report in civilian practice" with the mili-

tary's post-trial sentence review. *See also United States v. Lanford*, 6 U.S.C.M.A. 371, 386, 20 C.M.R. 87, 102 (1955) (Brosman, J., concurring). As the majority concede, Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, does not require preliminary warnings during the post-trial interview. Accordingly, as there is no constitutional or statutory basis for this Court to impose such a duty during the post-trial interview,[1] I would not impose that requirement upon the interviewer. Consequently, I discern no justification in either the provisions of the Uniform Code of Military Justice or in civilian practice and policy to invalidate what this Court has previously approved as consistent with, and in furtherance of, the Uniform Code and the Manual for Courts-Martial, United States, 1969 (Revised edition).

1. Obviously, the services involved can impose such a requirement by the promulgation of an appropriate regulation.