UNITED STATES, Appellant

v.

KENNETH W. WHITMAN, JR., Musician Seaman, U. S. Navy,
Appellee

3 USCMA 179, 11 CMR 179

No. 2168

Decided July 31, 1953

CAPT Carl G. Lutz, USMCR, for Appellant.
Leroy E. Lyon, Jr., Esq., CDR Francis X. Driscoll, USN, and CDR Howard
A. Patrick, USN, for Appellee.

Opinion of the Court

PAUL W. BROSMAN, Judge:
The accused was charged under the Uniform Code of Military Justice, Article 134, 50 USC § 728, with narcotics offenses. The first specification alleged the possession of heroin, and the second

179

a sale of the same drug in violation of the Harrison Act, 53 Stat 271, 274, as amended, 26 USC §§ 2553, 2557. On his plea of guilty, he was convicted following trial by special court-martial convened aboard the USS Boxer (CV–21). The convening authority and the supervisory authority approved in turn. Upon consideration by a board of review in the office of The Judge Advocate General, United States Navy, the conviction was reversed and the charges dismissed — for reasons which will be considered shortly. Following the action of the board of review, The Judge Advocate General certified to this Court the two questions set out below:

"(1) Is the action of the Board of Review, as a matter of law, a proper exercise of the authority vested in it by Article 66(c), Uniform Code of Military Justice?

"(2) Is the record of trial a 'complete' record of the proceedings within the meaning of Article 19, Uniform Code of Military Justice?"

## II

With respect to the first question, only the following facts need be noted. As a consequence of the ▮▮▮▮▮ ▮ transaction underlying the two specifications involving the accused, Whitman—and with which we are concerned here—one Rotchstein had also been convicted of possession and sale of heroin following a previous separate trial by a court-martial of the same grade. His conviction, however, was set aside and the charges were dismissed by the convening authority on the ground that he had been entrapped. The board of review here concluded that it would "create an injustice" to the present accused to permit his conviction to stand in the face of the dismissive action of the convening authority in the Rotchstein case.

We must characterize this action of the board as error. Its wholly commendable desire to protect the interests of an accused—and with which we can have no quarrel—carried it, we believe, well beyond the limits of its reviewing authority as established in Article 66

(c) of the Code, supra, 50 USC § 653 (c):

"In a case referred to it, the board of review shall act only with respect to the findings and sentence as approved by the convening authority. It shall affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, *on the basis of the entire record,* should be approved. *In considering the record* it shall have authority to weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses." [Emphasis supplied].

It is quite apparent that boards of review, like other appellate bodies exercising judicial or quasi-judicial functions, are limited to the record presented to them. Although the matter dehors the record resorted to in this case operated in favor of the accused, this does not change the essentially erroneous character of the board's action, nor serve to supply authority where none exists. If the board's present action were to be approved, it would be illogical to deny to any reviewing authority the power to examine matter aliunde the record which would operate *against* the interest of the accused person. That is to say, such an authority might be permitted to look outside the record for evidence of guilt. This we have already branded as reversible error at the hands of a convening authority. United States v. Duffy (No. 1404), 3 USCMA 20, 11 CMR 20, decided July 3, 1953. Therefore, the historic limitation mentioned earlier must, of necessity, apply to boards of review. Accordingly, the fact that Rotchstein's conviction had been set aside by the convening authority on the basis of entrapment was not available as a prop for action by the board of review here. It would be well to observe also that as to this accused, Whitman, no slightest suggestion of entrapment has ever been made. The mere fact that this defense may have been available to Rotchstein constitutes no indication whatever that it was also available to the accused.

## III

The record of trial in this case assumes, in part, the form of a narrative summary of the proceedings, and, in part, that of a verbatim account. Defense counsel asserts as fatal error this failure to preserve a verbatim account of the entire proceedings before the special court-martial. This appears to have been the notion advanced by the board of review which said that: "The record before us is not complete enough to constitute a 'complete' transcript within the purview of Article 19, UCMJ; Par 15b, MCM, 1951."

Article 54(b) of the Code, supra, 50 USC § 629(b), provides merely that a special court-martial shall keep a "separate record," which shall contain such matter, and be authenticated in such manner, as may be required by regulations promulgated by the President. Article 19, 50 USC § 579, relating to jurisdiction of special courts-martial, further directs that: "A bad-conduct discharge shall not be adjudged unless *a complete record* of the proceedings and testimony before the court has been made." (Emphasis supplied). This demand for completeness is the only requirement contained in the Code itself concerning the content of a record of a special court-martial proceeding. In addition, paragraph 15b of the Manual for Courts-Martial, United States, 1951, like Article 19 of the Code, supra, provides that a special court-martial shall not adjudge a bad-conduct discharge unless a *complete* record of the proceedings has been kept. However, paragraph 83a of the Manual, supra, contains the language set out hereafter:

"Subject to the exceptions set forth in appendices 8 and 9, a record of trial by special court-martial in which a bad conduct discharge is adjudged will contain *a verbatim transcript* of all proceedings in open court. It will follow the form in appendix 9 and will be prepared and disposed of in accordance with the rules prescribed in 82 for a record of trial by general court-martial. As to authentication, see 83c and appendix 9b(2)." [Emphasis supplied.]

Here, for the first time, we find expressed a requirement that a verbatim transcript of trial proceedings be reflected in the record. Articles 54(b) and 19 of the Code, supra, and paragraph 15b of the Manual, supra, all speak of a complete record, whereas paragraph 83a, just examined, purports to demand a verbatim record. All will agree, we are sure, that a complete record need not necessarily be verbatim, so long as it constitutes an accurate account of the essential substance of the proceedings reported. We need not resolve any possible inconsistency between paragraph 15b and 83a of the Manual, supra. There is, of course, no conflict between paragraph 83a, on the one hand, and Articles 19 and 54(b) of the Code, on the other—for, although the latter speak only of a complete record, it was certainly within the authority delegated to the President to require, in addition, a verbatim account of special court proceedings which culminate in the imposition of a bad-conduct discharge. Insofar as any sort of inconsistency between paragraphs 15b and 83a of the Manual may be said to exist, we believe that the latter, as setting out the more stringent rule and one inclining more directly in favor of an accused person, must prevail. Accordingly, except with regard to those minor matters excepted in Appendices 8 and 9 of the Manual, supra, we think the failure to record verbatim the trial proceedings in this case must be treated as error.

## IV.

That this error was prejudicial is perfectly clear. This is true for the reason that the accused has been sentenced—in addition to a period of confinement and to forfeitures—to receive a bad-conduct discharge. The punitive discharge, as we have seen, cannot stand without the support of a verbatim record. This portion of the sentence is, therefore, illegal. It is conceivable that there may be in existence untranscribed reporter's notes which could serve to fill in the void in the present record. However, the Government has not sug-

gested that this is the fact, and we must infer that, if it were possible to provide a verbatim record here, the problem raised would have become moot long since through appropriate record correction.

V

In accordance with what has been said, the first certified question is answered in the negative. The second, as interpreted by us and developed in earlier portions of this opinion, is answered similarly. The findings, and so much of the sentence as does not include a bad-conduct discharge, are affirmed.

Chief Judge QUINN and Judge LATIMER concur.