UNITED STATES, Appellant

v

ROBERT M. WAYMIRE, Specialist First Class, U. S. Army, Appellee

9 USCMA 252, 26 CMR 32

No. 10,618

Decided May 16, 1958

*First Lieutenant John E. Riecker* argued the cause for Appellant, United

States. With him on the brief were *Lieutenant Colonel John G. Lee* and *First Lieutenant Jay D. Fischer.*

*First Lieutenant Neil Flanagin* argued the cause for Appellee, Accused. With him on the brief were *Colonel J. M. Pitzer* and *Major Frank C. Stetson.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The issue in this case, which comes here by way of certification by The Judge Advocate General of the Army, is whether a board of review had the power to set aside findings of guilt without first deciding whether the court-martial had jurisdiction, or whether such findings were incorrect in law and fact. Although the issue is narrow, it is replete with significance. As a proper background for its consideration only a brief statement of the facts is necessary.

The accused was tried by general court-martial on May 13, 1957, for the offenses of larceny, forgery, and absence without leave, in violation of Articles 121, 123, and 86, Uniform Code of Military Justice, 10 USC §§ 921, 923, and 886, respectively. The date of the alleged larceny and forgery offenses was June 11, 1956. Both of these offenses were allegedly committed in Seattle, Washington. The unauthorized absence was from November 26, 1956, to January 22, 1957. The accused pleaded guilty to all charges and specifications and was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for two years. The convening authority, in his action, however, approved only so much of the sentence as provided for a bad-conduct discharge (suspended), total forfeitures, and confinement at hard labor for nine months.

Back in September of 1951, the accused had entered into a six-year enlistment. On November 7, 1956, he re-enlisted at Fort Myer, Virginia, to fill his own vacancy in accordance with applicable Army regulations then in effect.[1] He had been honorably discharged the previous day, at which time he had been issued a "short form" discharge.

Before the board of review, the accused's appellate defense counsel urged reversal of the larceny and forgery offenses on the ground that the court-martial lacked jurisdiction to try him for those offenses.[2] It was argued that the issuance of the discharge operated to sever the court-martial's jurisdiction to try the accused for those offenses committed prior to the date of such discharge.[3] The Government took a contrary position in contending that military jurisdiction never ceased because the accused by the nature of his discharge had never reverted to a civilian status. The Government's position was based upon the cases of United

---

[1] Paragraph 12*b*, AR 601–210, Personnel Procurement, April 12, 1956, provided that Regular Army enlisted persons serving in permanent grade of E–7, E–6, or E–5, who had less than one year remaining in their current enlistment could be discharged for the convenience of the Government under AR 635–205, for the purpose of re-enlisting for an unspecified period of time "provided reenlistment is accomplished the day following discharge." Further that such discharge would be approved only when it is determined that such action will serve the best interest of the Army.

Paragraph 3*b*, AR 635–205, Personnel Separations, April 2, 1956, pertaining to discharge and release for the convenience of the Government, provided that individuals currently serving in the Regular Army could be discharged from their enlisted status to permit immediate re-enlistment in the Regular Army for a term of three years or more and that such individuals "will be reenlisted on the day following discharge." It was further provided that the discharge certificate "will not be delivered to the individual until after reenlistment is effected."

[2] As to the larceny charge, the board found the accused's plea had been improvidently entered and set aside the findings as to that offense and dismissed the charge.

[3] In support of this contention, the accused relied heavily upon the case of Hirshberg v Cooke, 336 US 210, 69 S Ct 530, 93 L ed 621.

States v Gallagher, 7 USCMA 506, 22 CMR 296; United States v Johnson, 6 USCMA 320, 20 CMR 36; and United States v Solinsky, 2 USCMA 153, 7 CMR 29.

The board of review in its opinion stated that, after carefully considering the issue, the members had been "unable to reach complete agreement as to whether or not the pronouncements in *Hirshberg* apply to this case." The members, however, were in agreement "That an extremely close question is presented and that the nonapplicability of *Hirshberg* is not so clearly established as to render it possible to dismiss lightly the contentions advanced by appellate defense counsel." The board then set aside the findings of guilt of the forgery offense and ordered the same dismissed. They based their action on the following reasoning, which is quoted in part below, limited to pertinency:

"In view of the foregoing we have examined the record in an attempt to arrive at a workable solution which will do substantial justice both to the accused and the government and which will, at the same time, avoid saddling the accused with the undesirable effects which could otherwise flow from the problem involved. We believe that the action which follows satisfies these requirements.

. . . . .

"In connection with our disposition of the case the following facts were also noted. In apparent recognition of accused's extended record of prior service the convening authority, as a part of the pretrial agreement, agreed to and did suspend accused's punitive discharge in order that he might have an opportunity to work toward restoration. We feel that such action was clearly warranted, and we believe that the appropriate authorities at the accused's place of .confinement will take the necessary steps to assure that the accused's record and conduct while encarcerated [sic] receive sufficiently close scrutiny to afford assurance that a fair determination is made as to his fitness for restoration to duty. Also

it should be noted that the offense alleged under Charge II was predicated upon the fact that accused signed an allotment check belonging to his wife."

Only the findings of guilt of the unauthorized absence offense were affirmed, and a reassessment of the sentence resulted in affirmance of only so much of the approved sentence as provided for a bad-conduct discharge (suspended), total forfeitures, and confinement at hard labor for six months.

The board's opinion indicated that its action in dismissing the forgery offense was occasioned primarily by an apparent inability on the part of its members to reach agreement on the jurisdictional issue presented. In an effort to resolve this dilemma, the board side-stepped the legal issue argued by counsel in their respective assignments of error, and took recourse in what may be termed a compromise holding in the form of "a workable solution which will do substantial justice both to the accused and the government." In arriving at its conclusion in this matter, it took cognizance of the action by the convening authority in suspending the punitive discharge, thereby affording the accused an opportunity at rehabilitation and subsequent restoration to duty, as well as the extenuating fact that the accused had signed an allotment belonging to his wife. We assume this solution was arrived at in the hope that both parties would find this equitable result to their mutual satisfaction. In effect, the board—no matter what view we take of the ennobling motivations expressed—conducted the proceedings in a manner not unlike an arbitration or mediation board designed to effect an adequate and satisfactory compromise between negotiating parties. This philosophical concept must be characterized as error for the board clearly exceeded the restrictive powers granted to it by Congress. The basic grant of authority to be exercised by boards of review is that which is specifically enunciated in Article 66(c) of the Code, supra, 10 USC § 866(c), which provides as follows:

"(c) In a case referred to it, the

board of review may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses."

The extent of a board of review's powers over findings have frequently been the subject of review by this Court. In United States v Fleming, 3 USCMA 461, 13 CMR 17, we said that a board of review "is under a duty to affirm so much of the findings of guilty as is not affected by error committed at the trial." Unlike a convening authority, who may disapprove findings of guilt for any reason, or for no reason at all, a board of review may only disapprove such findings as it finds incorrect in law and fact. United States v Massey, 5 USCMA 514, 18 CMR 138. It was never intended that a board of review be given the power to disapprove findings in its "discretion." Cf. Article 64, of the Uniform Code, supra, 10 USC § 864. Not only does Article 66, supra, require that a board affirm findings of guilt which it determines to be correct in law and fact, but also that such determination be made "on the basis of the entire record." In United States v Whitman, 3 USCMA 179, 11 CMR 179, we said that it was error for a board of review to rely upon matter lying outside the record of trial in setting aside an otherwise valid conviction. It was held in that case that such action went well beyond the statutory limits established by the Code. Cf. United States v Burns, 2 USCMA 400, 9 CMR 30. In the instant case, there is no question but that the board of review, in setting aside the forgery conviction solely on the basis of "substantial justice," exceeded the scope of its authorized statutory functions. United States v Gordon, 2 USCMA 632, 10 CMR 130. The certified question is answered in the negative. The decision of the board of review is reversed and the record of trial returned to that body for further action not inconsistent with this opinion.

Judge LATIMER concurs.

QUINN, Chief Judge (dissenting):

When the board of review decided this case it had only two members. From their opinion, they apparently could not agree on the law; accordingly they effected a practical "disposition" of the case. This Court has taken similar action in a number of cases. United States v McMahan, 6 USCMA 709, 21 CMR 31; United States v Dunnahoe, 6 USCMA 745, 21 CMR 67; United States v Cudd, 6 USCMA 630, 20 CMR 346. The United States Court of Appeals for the Fifth Circuit has also taken such action under similar circumstances. Gulf Oil Corporation v Wright, 236 F2d 46 (CA 5th Cir) (1956). I would, therefore, answer the certified question in the affirmative.