*345 SULLIVAN, Judge
(dissenting):
(I)

Overview

The majority opinion creates a new legal right for a military accused to have legally adequate and separate findings of guilty[1] dismissed because they constitute an “unreasonable multiplication of charges.” It remands this case for reconsideration by the Court of Criminal Appeals to make a discretionary determination whether appellee’s conviction for wrongfully selling government property, i.e., C-4 explosives (Article 108, UCMJ), and his conviction for possessing, transporting, storing, and/or selling explosive material knowing it to be stolen (10 USC § 842(h) and Article 134, UCMJ) are an “unreasonable multiplication of charges.”
I dissent to this remand and the judicial creation of a new right for military accused to have legally separate findings of guilty dismissed because an appellate court somehow considers them unreasonable. See generally United States v. Waymire, 9 USCMA 252, 255, 26 CMR 32, 35 (1958) (“It was never intended that a board of review be given the power to disapprove findings in its ‘discretion.’ ”). In my view, this judicial remedy conflicts with the traditional and present practice at courts-martial and is otherwise unauthorized. See Discussion, RCM 1003(c)(1)(C), Manual for Courts-Martial, United States (1998 ed.); see also United States v. Scheffer, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (President, not appellate court, should make rules of evidence and procedure at courts-martial).
(II)

A New Legal Right

In this case, the appellate court below established “an equitable power” for itself to dismiss legally separate findings of guilty when it determines in its discretion that an “unreasonable multiplication of charges” has occurred. It cited the decision of the Air Force Court of Criminal Appeals in United States v. Erby, 46 MJ 649, 651 (1997), as authority for this “equitable power.” Erby, in turn, cited as authority the Discussion sections of two Manual provisions (RCM 307(c)(4) and 1003(c)(1)(C)) and a decision of this Court in United States v. Foster, 40 MJ 140, 144 n. 4 (CMA 1994). The majority of our Court today rejects the equitable power approach of the appellate court below. However, it recognizes a “new legal power” of a Court of Criminal Appeals to set aside findings of guilty which are legally separate under United States v. Teters, 37 MJ 370 (CMA 1993), but are nonetheless “unreasonable” in its view. The sole legal authority cited for this new legal power is the above-noted Discussion section of RCM 307(c)(4).
More particularly, the lower court gave itself a new power, and the majority of this Court now endorses this new power but calls it a different name. Basically, this new power is a tool to be used against the Government [2] whenever a trial judge or an appellate court reviews two closely related charges in a trial and determines that, even though the two charges are not multiplicious under the law, the charges are unfair because of “an unreasonable multiplication of charges.” Under this new power, if a judge or court in its discretion determines that two charges are an “unreasonable multiplication of charges,” then the judge or court must dismiss the “unreasonable” charge or consolidate that charge with another. Judicial action thus transforms a hortatory principle of military justice (that a single instance of misconduct should not give rise to an unreasonable multiplication of charges by the prosecution) into a legally enforceable right of an accused to dismissal of charges or findings.
*346 (HI)

Purported Legal Authority

The majority supports its creation of this new legal right with a slender legal thread, i.e., a non-binding sentence in the Discussion section of RCM 307(c)(4), which states:
What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person.
(Emphasis added.) In my view, this advisory caveat is an insufficient legal basis on which to rely in creating a new legal right to dismissal of a charge or finding of guilty which is legally separate. Therefore, I cannot join in recognizing this new right, which would permit the court below on remand to consolidate two legal criminal convictions into one.
This new right, created by the lower court and endorsed by the majority of our Court, is not found in the Constitution, nor in any statute, nor even in a binding section of the Manual for Courts-Martial. Therefore, I am reluctant to create such a right, even though I do believe in the principle that the prosecution should not unreasonably multiply charges against one person on the basis of substantially one transaction. This long established principle against “unreasonable multiplication of charges” can only be transformed into a legal right of an accused by Congress in a statute, the President in the Manual for Courts-Martial, or by this court in applying clear constitutional, statutory, or regulatory law. In sum, the creation of a new legal power must be based on actual legal authority. As the Roman philosopher Lucretius said, “Nothing can be created out of nothing.” De Rerum Natura, Book 1, line 155.
(IV)

State of the Law

The majority creates a new legal remedy for the military accused for “unreasonable multiplication of charges.” While avoidance of unreasonable multiplication of charges has long been a general principle of military law, its remedy has always been restricted to sentencing an accused only as to the more serious offense (see authorities cited below). By permitting the Court of Criminal Appeals to dismiss findings of guilty for an unreasonable multiplication of legally separate charges, this Court goes beyond what is permitted by the Constitution, the Code, the Manual, and prior military practice. Compare RCM 907(b)(3)(B) (motion to dismiss “multiplicious” offense permitted); cf. Discussion, RCM 1003(c)(1)(C) (even if offenses are legally separate, they may not be separately punishable).
(A)

DISCUSSION SECTION OF MANUAL CREATES NO LEGAL RIGHTS

The majority opinion places exclusive weight on the Discussion section of RCM 307(c)(4) as authorizing this new right of the military accused to have findings of guilty dismissed. RCM 307(c)(4) contains the following in this regard:
(4) Multiple offenses. Charges and specifications alleging all known offenses by an accused may be preferred at the same time. Each specification shall state only one offense.

Discussion

What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person. See RCM 906(b)(12) and 1003(c)(1)(C). For example, a person should not be charged with both failure to report for a routine scheduled duty, such as reveille, and with absence without leave if the failure to report occurred during the period for which the accused is charged with absence without leave. There are times, however, when sufficient doubt as to the facts or the law exists to warrant making one transaction the basis for charging two or more offenses. In no case should both an offense and a lesser-included offense thereof be separately charged.
See also RCM 601(e)(2) concerning referral of several offenses.
(Emphasis added.)
In my view, this language, reasonably construed, neither expressly or implicitly autho *347 rizes a Court of Criminal Appeals to dismiss findings of guilty to offenses which are otherwise legally separate. Cf. RCM 907(b)(3)(B).
I also note that it is specifically recognized in the Manual for Courts-Martial that the Discussion section is not binding and creates no legal rights. The Discussion to paragraph 4 of Part 1 of the Manual for Courts-Martial states in pertinent part:
These supplementary materials do not constitute the official views of the Department of Defense, the Department of Transportation, the Department of Justice, the military departments, the United States Court of Appeals for the Armed Forces, or any other authority of the Government of the United States, and they do not constitute rules. Cf., for example, 5 USC § 551 (1982). The supplementary materials do not create rights or responsibilities that are binding on any person, party, or other entity (including any authority of the Government of the United States whether or not included in the definition of “agency” in 5 USC § 551(1)). Failure to comply with matter set forth in the supplementary materials does not, of itself, constitute error, although these materials may refer to requirements in the rules set forth in the Executive Order or established by other legal authorities (for example, binding judicial precedents applicable to courts-material) which are based on sources of authority independent of the supplementary materials.
(Emphasis added.)
Finally, the Discussion section to RCM 1003(c)(1)(C) suggests the practice for treating offenses which are legally separate but which constitute an unreasonable multiplication of charges. It states in pertinent part:
Even if each offense requires proof of an element not required to prove the other, they may not be separately punishable if the offenses were committed as the result of a single impulse or intent. For example, if an accused found guilty of larceny (see paragraph 46, Part IV) and of unlawfully opening mail matter (see paragraph 93, Part TV) opened the mail bag for the purpose of stealing money in a letter in the bag, the offenses would not be separately punishable. Also, if there was a unity of time and the existence of a connected chain of events, the offenses may not be separately punishable, depending on all the circumstances, even if each required proof of aMifferent element.
(Emphasis added.) Again, this language does not purport to authorize the dismissal of one of the separate charges which should not be separately punished. Instead, the remedy is to ignore this offense when sentencing a military accused.
In sum, neither the Constitution nor the Uniform Code of Military Justice authorizes a trial judge or the Court of Criminal Appeals to dismiss findings of guilty because they are an “unreasonable multiplication of charges.” The majority nevertheless creates a right for the military accused to ask a military judge and the Court of Criminal Appeals to dismiss charges against him or set aside findings of guilty based on a nonbinding Discussion section of the Manual. To the extent that this right to dismissal is predicated on the Discussion section of RCM 307(c)(4), it is simply unsupported as a matter of law.
(B)

HISTORICAL PRACTICE AT COURTS-MARTIAL PROVIDES NO SUCH LEGAL RIGHT

Unreasonable multiplication of charges has long been a concern at courts-martial. Winthrop commented on this problem as follows:
DIFFERENT STATEMENTS OF SAME OFFENCE.
It is laid down by Chitty[75] that — “It is frequently advisable, when the crime is of a complicated nature, or it is uncertain whether the evidence will support the higher and more criminal part of the charge, or the charge precisely as laid, to insert two or more counts in the indictment.” And Wharton[76] writes — “Every cautious pleader will insert as many counts as will be necessary to provide for every possible contingency in the evidence; and this the law permits.” In military cases *348 where the offence falls apparently equally within the purview of two or more articles of war, or where the legal character of the act of the accused cannot be precisely known or defined till developed by the proof, it is not unfrequent in cases of importance to state the accusation under two or more Charges[77] — as indicated later in this Chapter. If the two articles impose different penalties, it may, for this additional reason, be desirable to prefer separate charges, since the court will thus be invested with a wider discretion as to the punishment. Where, however, the case falls quite clearly uritkin the definition of a certain specific article, to resort to plural charges is neither good pleading nor just to the accused. At most, in such cases, a single additional charge under Art. 62 should in general suffice. An unnecessary multiplication of forms of charge for the same offence is always to be avoided.[78] In view of the peculiar authority of a court-martial to make corrections an substitutions in its Findings, and to convict of a breach of discipline where the proof fails to establish the specific act alleged, the charging of the same offence under different forms is much less frequently called for in the military than in the civil practice.
William Winthrop, Military Law and Precedents 143 (2d ed. 1920 Reprint).
This general principle of law (that the unnecessary multiplication of charges is to be avoided) has been followed for many years at courts-martial. See Discussion, ROM 307(c)(4), Manual for Courts-Martial, United States (2000,1998,1995,1994, and 1984 eds.); para. 266, Manual for Courts-Martial, United States, 1969 (Revised ed.) and 1951; para. 27, Manual for Courts-Martial, U.S. Army, 1949 and 1928; para. 66, Manual for Courts-Martial, U.S. Army, 1921 and 1917; George B. Davis, A Treatise on the Military Laws of the United States 72 n. 3 (1913).
Nevertheless, this general exhortation to avoid the unreasonable multiplication of charges has never been enforced by the dismissal of such charges or the setting aside of findings to such charges. The 1917 Manual for Courts-Martial makes clear that this type of erroneous pleading is to be cured by sentencing the accused for only the more serious portion of the charges. It states:
66. Duplication of charges. The duplication of charges for the same act or omission will be avoided except when, by reason of lack of definite information as to available evidence, it may be necessary to charge the same act or omission as constituting two or more distinct offenses. When the same act or omission in its different aspects is charged as constituting two or more offenses, the court, even though it arrives at a finding of guilty in respect of two or more specifications, should impose punishment only with reference to the act or omission in its most important aspect, and if this rule be not observed by the court the reviewing authority should take the necessary action. Thus a soldier should not be punished for disorderly conduct and for assault, when the disorderly conduct consisted in making the assault. And so, a person subject to military law should not be charged under A.W. 61 for failure to report for a routine duty at a time included in a period for which he is charged with absence without leave under the same article; otherwise, when the duty is not a routine duty. Routine duties are those that are regularly scheduled, such as reveille, retreat, stables, fatigue, schools, drills, and parades, but do not include practice marches or other previously specially appointed and important exercises, of which the accused is chargeable with notice.
(First emphasis added.)
This practice of treating unnecessary multiplication of charges during sentencing is carried in the various Manuals for Courts-Martial up to the present day. See para. 66,1921 *349 Manual; para. 80a, 1928 and 1949 Manual;para. 76a.(8), 1951 Manual; para. 76a.(5), 1969 Manual; Discussion, ROM 1003(c)(1)(C), 1984, 1994, 1995, 1998, and 2000 Manuals.
(C)

MILITARY CASE LAW PROVIDES NO LEGAL RIGHT

The Court of Criminal Appeals indicated that it found support for its new equitable power to dismiss findings of guilty on the basis of “unreasonable multiplication of charges” in military case law. I disagree. Dicta in United States v. Foster, 40 MJ at 144 n. 4, and United States v. Morrison, 41 MJ 482, 484 n. 3 (1995), is not legally sufficient to establish such a proposition.[3] Moreover, although the service Courts of Criminal Appeals have recognized such an equitable power, they rest exclusively on the dicta noted above. See United States v. Oatney, 41 MJ 619, 623 (N.M.Ct.Crim.App.1994); United States v. Dean, 44 MJ 683, 684 n. 2 (Army Ct.Crim.App.1996); United States v. Wilson, 45 MJ 512, 513 (Army Ct.Crim.App. 1996); United States v. Erby, 46 MJ 649, 651 (A.F.Ct.Crim.App.1997). See generally Michael J. Breslin and LeEllen Coacher, Multiplicity and Unreasonable Multiplication of Charges: A Guide to the Perplexed, 45 A.F.L.Rev. 99, 109-10 (1998) (military policy based on fairness). The bottom line is that the power to dismiss charges as a remedy for “unreasonable multiplication of charges” is a legal fiction. Cf. Ball v. United States, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985) (power to dismiss multiplicious specifications under the Double Jeopardy Clause expressly established).
(V)

Unreasonableness

Both the lower appellate court and the majority agree that appellee’s offense of wrongfully selling government property in violation of Article 108, UCMJ, and knowingly possessing, transporting, storing, and/or selling stolen explosive material in violation of 18 USC § 842(h) and Article 134 are legally separate offenses under United States v. Teters, supra. Nevertheless, the majority remands this case to the Court of Criminal Appeals to determine whether these two findings of guilty constitute an “unreasonable multiplication of charges.” No binding guidance is provided the lower court in making its discretionary call on this question. Assuming the power created by the majority is valid, no reasonable person could conclude under the facts and circumstances of this case that such findings of guilty were an “unreasonable multiplication of charges.”
This was a guilty plea case, and appellee admitted the following facts concerning his crimes:
ACC: Sir, between 1 May 1998 and 30 June 1998 I was giving Corporal Harris a ride home from work. We had just finished work and was driving to his residence. On the way to his residence he was explaining to me a situation where him and his wife had gotten into a disagreement or an argument because of something that happened in the house. On the time drive towards the house he was explaining to me what it was, what the situation was, and he had let me know that she had found certain C-4 in the house, and she didn’t want it in the house, and that was part of the disagreement and argument.
Once we got to his house, sir, we went in, I went to make a phone call. He had showed me the G-4. At that time he was saying that he just wanted to get rid of it, sir. Therefore we had come to an agreement that I was willing to take it from him. I had taken the C-4, and later on I brought it back to — had left his residence, gone into my car, went back to my residence, sir. I had it there for, I believe, a week or so, sir.
At that time, one of my so-called friends which I was hanging out with a lot, Private *350 Hallbert, would come over a lot, basically every day, every other day, you know, we would hang out, go surfing or something, sir. At that time he had noticed that I had the C-4. I had showed him the C — 4, and he was willing to buy the C-4 from me, sir. At that time we had come to an agreement where he was willing to pay me the money for the C-4, and at that time, between 29 June 1998 and 30 June 1998,1 sold the C-4 to Private Hallbert, sir.
(R. 31-32).
Appellee was charged with and pleaded guilty to four offenses concerning his possession and disposition of 1.25 pounds of M112 Demolition Charge (C — 4). First, he admitted conspiring with Corporal Harris beginning in early May of 1998 to wrongfully dispose of this explosive material, which was the property of the Government. (R. 42-49). Second, he admitted receiving this explosive material from Corporal Harris in early June of 1998, knowing it to be stolen government property. (R. 49-57). Third, he admitted possessing this explosive, transporting it to his house, storing it for several weeks, and agreeing to sell it to Private Hallbert. (R. 57). Finally, he admitted to selling and delivering this explosive material on or about June 30, 1998, to Private Hallbert. (R. 57-61).
Is this an unreasonable multiplication of charges? When you look at Charge II (the selling of the explosive (C-4) to Private Hall-bert on or between June 29 and 30, 1998), you see the gravamen of the crime is the sale of government explosives to a particular person at a particular time. When you look at Charge IV, specification 2 (the unlawful possessing, storing, transporting, and/or selling government explosives over a 30-day period), you see the gravamen of the offense is the possession and storage of explosives in appel-lee’s home over an earlier 2-week period in June 1998. These are discrete criminal acts.
The lower court ordered the two convictions combined into one Article 134 conviction. The lower court could not do this under Teters, so it used a power apparently grounded in equity (the power does not exist in case law or any statute) to give a new remedy for an “unreasonable multiplication of charges,” which “promot[es] fairness considerations separate from an analysis of the statutes, their elements, and the intent of Congress.” 53 MJ at 604-05. It is remarkable that the majority of this Court adopts “the analysis by the Court of Criminal Appeals” on this point. 55 MJ at 337. If the lower court is going to create a new equity power, and if our Court is going to help the lower court create this power, why do it in a case like the present one, where there clearly was a long-term possession of explosives and a distinct sale of the same? Prosecution for these two distinct crimes here appears very reasonable. At the very least, the majority should wait for an unreasonable fact pattern to create a new power. I should think a more deserving case to create a new equitable power like this would be in a case where a man is absent without leave for 30 continuous days and is charged with 30 counts of AWOL instead of one charge. Absent some clarity, the majority’s label of an “unreasonable multiplication of charges” becomes no more than a substitute for the lower court’s equity power.
(VI)

Certified Questions

Although the majority fails to do so, I would answer the three issues in this ease which the Judge Advocate General has certified. Article 67(a)(2), UCMJ. I want to answer each separately and directly.
The first certified question is:
WHETHER THE LOWER COURT ERRED IN HOLDING THAT AN EQUITABLE DOCTRINE OF UNREASONABLE MULTIPLICATION OF CHARGES EXISTS SEPARATE FROM MULTIPLICITY AND IS AN INDEPENDENT BASIS FOR GRANTING RELIEF.
It is my view, and as I read the majority opinion’s implication as well, that the Court of Criminal Appeals erred in creating an equity power for itself. United States v. Waymire, 9 USCMA at 255, 26 CMR at 35 (“It was never intended that a board of re *351 view be given the power to disapprove findings in its ‘discretion’ ”). I join the majority in its act of setting aside the decision of the Court of Criminal Appeals on this basis.
The second certified issue asks:
WHETHER THE LOWER COURT ERRED BY ENUNCIATING AND APPLYING A NEW PER SE RULE THAT IT WILL NEVER APPLY FORFEITURE TO CLAIMS OF UNREASONABLE MULTIPLICATION OF CHARGES RAISED FOR THE FIRST TIME ON APPEAL.
My view is that the Court of Criminal Appeals is a court of law and, when acting in this capacity, should be governed by the rule of law. See United States v. Claxton, 32 MJ 159, 165 (Sullivan, C.J., concurring in part and in the result). Nothing said in United States v. Lacy, 50 MJ 286 (1999), is to the contrary. Accordingly, I disagree with the majority that the Court of Criminal Appeals had discretion to ignore the law of waiver or forfeiture when dealing with questions of law such as unreasonable multiplication of charges. See United States v. Heryford, 52 MJ 265, 266 (2000); United States v. Lloyd, 46 MJ 19 (1997); United States v. Britton, 47 MJ 195 (1997) (law of waiver applicable to claims that charges are multiplicious as matter of law).
The third certified issue is:
WHETHER THE LOWER COURT ERRED IN GRANTING APPELLEE RELIEF FOR BEING CONVICTED OF AN UNREASONABLE MULTIPLICATION OF CHARGES WITHOUT FIRST FINDING THAT APPELLEE HAD SUFFERED MATERIAL PREJUDICE TO A SUBSTANTIAL RIGHT.
In my view, the Court of Criminal Appeals must find error and material prejudice before it provides relief (Article 59(a), UCMJ), unless it specifically invokes its unique sentence approval powers. Article 66(c), UCMJ. See United States v. Claxton, supra at 165 (Sullivan, C.J., concurring in part and in the result).

(VID

Need For Remand

The remand portion of the majority opinion recognizes a unique “legal” right for a military accused to seek protection from the Court of Criminal Appeals (and presumably a trial judge) against “unreasonable multiplication of charges.” As stated before, the majority opinion bases this new right on the non-binding Discussion section to RCM 307(c)(4). This right does not exist in the Code or in the Manual, at least for findings of guilty that are otherwise legally separate. Cf RCM 907(b)(3)(multiplicious specification “may be dismissed upon timely motion by the accused”). It does not exist in federal civilian case law. See generally 24 James Wm. Moore et al., Moore’s Federal Practice and Procedure § 608.04[3] (3d ed.2001); 1A Charles Alan Wright, Federal Practice and Procedure § 142 (3d ed.1999). Finally, this newly created right against unreasonable charging is far broader than the particular due process concerns of United States v. Sturdivant, 13 MJ 323 (CMA 1982). The purpose of this new “right” (to allow trial and appellate judges “to address the consequences of an abuse of prosecutorial discretion in the context of the unique aspects of the military justice system,” 55 MJ at 338) provides no real guidance as to its scope and renders it a dangerous judicial creation.
Various judges of this Court have over the years generally warned prosecutors and convening authorities to avoid “unnecessary piling on” in charging a servicemember at courts-martial. See United States v. Morrison, 41 MJ at 484 n. 3; United States v. Foster, 40 MJ at 144 n. 4. However, the majority opinion’s instructions for remand are given to the Court of Criminal Appeals in a case where only two specifications are at issue, hardly a situation of “piling on.” Thus, the majority’s rubric of “unreasonableness,” without more particular definition, effectively provides the Court of Criminal Appeals with carte blanche power to erase findings of guilty. This equity-type invention of the majority I cannot accept. See United States v. Waymire, supra. An appellate court cannot judicially create a new *352 equity power outside the Constitution, the statutes, and service regulations without engaging in judicial legislation. I would reverse the lower court and affirm both convictions at issue on this appeal. A remand is not necessary to do justice in this case.
(VIII)

Conclusion

The actions of the lower court and this Court strongly remind me of Homer’s hero, Ulysses, who encountered many obstacles on his sea voyage home to Ithaca. When forced to sail though a narrow strait guarded by the deadly Scylla and Charybdis, Ulysses managed with great difficulty to pass between them.[4] Unlike Ulysses, the majority — while avoiding Scylla (Equity) — has steered itself straight into the depths of Charybdis (Judicial Activism). by legislating a new legal “right” to dismissal of findings which constitute “an unreasonable multiplication of charges.” This remedy conflicts with past and present military practice and has no legal support anywhere in existing law and, therefore, I must dissent.

. The majority concedes that the offenses at issue are legally adequate and separate. See United States v. Teters, 37 MJ 370 (CMA 1993) (offenses found to be legally separate); see also United States v. Martin, 36 MJ 315 (CMA 1993) (offenses found not to be legally separate).

. As Justice Cardozo said:
But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.
Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 78 L.Ed. 674 (1934).

 1 C.L., 248.

 C. P. & P. § 297. And See 1 Archbold, 93; Com. V. Webster, 5 Cush., 321.

 "The commander who prefers a charge may, in the exercise of a just and legal discretion, when the act may fall under different articles of war, elect under which to charge it, or may charge it variously as in the several counts of an indictment." G.O. 18 of 1859.

 See G.O. 19, Dept. of the Columbia, 1872; G.C.M.O. 95 Div. Pacific & Dept. of Cal., 1881.

. No legal authority is cited in United States v. Foster for a power to dismiss such charges. United States v. Morrison only cites cases in which the charges are not legally separate, i.e., they are multiplicious for findings as a matter of law. See United States v. Dixon, 921 F.2d 194 (8th Cir.1990), cited in United States v. Teters, 37 MJ at 373 n. 1.

. In ancient Greek mythology, Scylla and Charybdis were fatal hazards marking the Straits of Messina. In a high cave on one side of the narrow and rocky passage lived the long-necked, six-headed monster Scylla, who plucked men from passing ships and devoured them. The shore opposite boasted the fatal whirlpool Charybdis, which three times daily would suck the surrounding seas (and any ships nearby) deep into its whirling center, and three times "vomit forth” the water so violently that the spray reached the other side of the straits. Odyssey XII, 11.73-110, 234-259.