STUCKY, Judge
(dissenting):
Equity is a Roguish thing: for Law we have a measure, know what to trust to; Equity is according to the Conscience of him that is Chancellor, and as that is larger or narrower, so is Equity. ‘Tis all one as if they should make the Standard for the measure we call a Foot, a Chancellor’s Foot; what an uncertain Measure would be this. One Chancellor has a long Foot, another a short Foot, a Third an indifferent Foot: ‘Tis the same thing in the Chancellor’s Conscience.
John Selden, Table-Talk: Being the Discourses of John Selden, Esq. 43-44 (Israel Gollancz ed., The Temple Classics, 3d ed.1906) (1689).
Sixty years after the enactment of the Uniform Code of Military Justice (UCMJ), the United States Air Force Court of Criminal Appeals and the majority discover a hitherto unknown power of the Courts of Criminal Appeals (CCAs) to disapprove findings that are correct in law and fact under the “should be approved” clause of Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2006). To infuse the “should be approved”' clause with this desired meaning, the majority embarks on a quixotic quest. It reaches its destination by misreading Article 66(e), concocting a novel understanding of the term “correct in law,” and despite protestations to the contrary, creating a standard so vague that it amounts to no standard at all, simply equity — the measure of the Chancellor’s foot. Ultimately, the majority’s approach eviscerates the requirement that “[a] finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.” Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006).
While I agree with the majority that we have jurisdiction over this ease, I continue to believe that a CCA is not authorized to disapprove a finding or sentence that is correct in law and fact. The majority’s reading of Article 66 is inconsistent with the language of the statute taken as a whole, the Supreme Court’s opinion in Jackson v. Taylor, 353 U.S. 569, 77 S.Ct. 1027, 1 L.Ed.2d 1045 (1957), interpreting the statute, and this Court’s precedents of more than fifty years.
The CCA’s action in setting aside Appel-lee’s conviction for possession of child pornography is beyond its statutory authority and therefore without effect. As the CCA found the conviction correct in law and fact, this Court should order the conviction reinstated.
I.
In exchange for the convening authority’s agreement to withdraw two specifications and cap the period of confinement that could be approved, Appellee pled guilty to a number of offenses, including possession of child pornography under clauses 1 and 2 of Article 134, UCMJ, 10 U.S.C. § 934 (2006). The CCA pointed out that the charges grew out of a love affair that Appellee was having with a seventeen-year-old girl, who sent him nude photos and a video of herself over the Internet. United States v. Nerad, 67 M.J. 748, 751 (A.F.Ct.Crim.App.2009). Although not raised by Appellee, the CCA asked whether it had authority to set aside a conviction that was correct in law and fact “in the interest of justice.” Id. at 749. As Appellee could lawfully see his paramour naked and, but for his *150 existing marriage, have sex with her, the CCA concluded that:
the [appellee’s] possession of the photos under these circumstances is not the sort of conduct which warrants criminal prosecution ... and that this conviction unreasonably exaggerates the criminality of his conduct. The question is whether we can set aside the conviction on that basis alone, even though we find no legal error and the appellant never raised an issue at trial, pleading guilty to that offense. The government ... unconvincingly argues that neither the plain language of the statute, its legislative history, nor case precedent indicates the Court can set aside a finding of guilty that is found correct in law and fact. We disagree on all points.
Id. (emphasis added).[1]
II.
This Court holds that the CCAs have broad authority to disapprove a finding that is correct in law and fact but that authority is not unfettered. United States v. Nerad, 69 M.J. 138, 140 (C.A.A.F.2010). This Court will “accept the CCA’s action unless in disapproving the findings the CCA clearly acted without regal'd to a legal standard or otherwise abused its discretion.” Id. at 147. It remands to the court below apparently to identify an
error — even error that would not preclude a determination that the finding was correct in law and fact — or other legal rationale with respect to the charge, the specification, the finding, the trial, or the post-trial process that warranted exercise of its unique power under Article 66(e), UCMJ. Nor did the CCA identify tangible factors, either by reference to other charges in the case or by reference to other cases, that led it to conclude that the finding “unreasonably exaggerate^] the criminality of’ the conduct, Nerad, 67 M.J. at 751-52, or any factor that caused the charge, albeit lawful, to constitute an abuse of prosecuto-rial discretion.
Id. at 147-48 (brackets in original) (footnote omitted).
III.
Although it is unclear to what extent it affects the ultimate decision in this case, the majority redefines the term correct in law to mean legally sufficient. Nerad, 69 M.J. at 141 n. 1 (citing United States v. Beatty, 64 M.J. 456, 458 (C.A.A.F.2007); United States v. Reed, 54 M.J. 37, 41 (C.A.A.F.2000)). This is a novel theory for which there is no support, even in the cases the majority cites.
Legal sufficiency concerns the state of the evidence against the accused — whether it is sufficient to justify the determination of the trier of fact that the accused is guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Reed, 54 M.J. at 41. The term “correct in law” is broader in scope and “pertains to errors of law.” United States v. Tardif, 57 M.J. 219, 224 (C.A.A.F.2002). Legal insufficiency is an error of law and is thus subsumed in the term “correct in law.” In Beatty and Reed, this Court was dealing with the specific question of whether the evidence was legally sufficient, not the broader question of whether the conviction was correct in law. Beatty, 64 M.J. at 457; Reed, 54 M.J. at 38.
IV.
The CCA’s action, and the certified issue, require us to interpret Article 66, UCMJ. Questions of statutory construction are questions of law that we review de novo. United States v. Lopez de Victoria, 66 M.J. 67, 73 (C.A.A.F.2008).
Our duty in interpreting a statute is to implement the will of Congress, “so far as *151 the meaning of the words fairly permit[].” Sec. & Exch. Comm’n v. Joiner, 320 U.S. 344, 351, 64 S.Ct. 120, 88 L.Ed. 88 (1943). In doing so, where possible, we should “avoid rendering superfluous any parts thereof.” Astoria Fed. Sav. & Loan Ass’n v. Solimino, 501 U.S. 104, 112, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).
As in all statutory construction eases, we begin with the language of the statute. The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the ease. The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent.
Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (quotation marks and citations omitted). Whether the statutory language is ambiguous is determined “by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).
V.
The scope of the CCAs’ authority is contained in Article 66(e), UCMJ, which provides that:
In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.
To analyze the statute, the majority breaks it down into its constituent parts: The CCA may affirm only such findings and sentence as it (1) finds correct in law; (2) finds correct in fact; and (3) “determines, on the basis of the entire record, should be approved.” Nev-ad, 69 M.J. at 141. As the majority notes, the three constituent parts of Article 66(c) “are grammatically coupled” such that the “should be approved” language must apply to both findings and sentence. Id. at 142. The question, therefore, is what does “should be approved” mean and how should it apply within the context of the whole statute?
The majority examines what it believes to be the correct application of Article 66(c)’s third constituent part to sentencing and applies the same logic to findings. It contends that the phrase “determines ... should be approved” gives the CCAs discretion to alter a sentence that is correct in law and fact. Id. at 142, 145-46. By applying the same logic to findings, the majority determines that the CCAs also have discretion to disapprove a finding that is correct in law and fact. See id. at 142-44.
Just as I disagree with the majority’s analysis of the CCAs’ powers to reduce sentences, I oppose its conclusions as to the CCAs’ powers to disapprove findings. I conclude that the “should be approved” language is not an independent grant of power, but merely a mechanism by which Congress granted authority to the CCAs to correct errors of fact or law, based on the entire record, without having to remand for a rehearing.
VI.
The CCA’s power to review a sentence for appropriateness is a function of its duty under Article 66(c) to affirm only so much of the sentence as it finds correct in fact. See Jackson v. Taylor, 353 U.S. 569, 576-77, 77 S.Ct. 1027, 1 L.Ed.2d 1045 (1957). It does not derive from the “should be approved” language of the statute. But see United States v. Lacy, 50 M.J. 286, 287-88 (C.A.A.F.1999).
A.
In Jackson, the Army Board of Review set aside the petitioner’s conviction for murder, affirmed his conviction for attempted rape, and reduced the sentence from mandatory *152 confinement for life to the maximum for attempted rape — confinement for twenty years. 353 U.S. at 570, 77 S.Ct. 1027. In a habeas petition, id. at 572, 77 S.Ct. 1027, Jackson asserted that Article 66(e) was ambiguous and that he should have received the benefit of that ambiguity: The Board of Review should have ordered a sentence rehearing rather than merely reassessing the sentence. Id. at 576, 77 S.Ct. 1027. The Supreme Court found “no authority in the Uniform Code for such a procedure.”[2] Id. at 579, 77 S.Ct. 1027. It concluded that
the words [of the statute] are clear. The board may “affirm ... such part or amount of the sentence, as it finds cor-rect_” That is precisely what the review board did here. It affirmed such part, 20 years, of the sentence, life imprisonment, as it found correct in fact and law for the offense of attempted rape. Were the words themselves unclear, the teachings from the legislative history of the section would compel the same result.
Id. at 576, 77 S.Ct. 1027 (emphases added).
B.
Because the Supreme Court found the language of Article 66(c) to be clear, there was and is no need to resort to the legislative history to interpret the statute. Nevertheless, while the Supreme Court decided Jackson based on the statute’s clear language, it did not shun the legislative history but rather embraced it. It determined that the clear language of the statute was consistent with the legislative history. Id. at 576, 77 S.Ct. 1027. It quoted the following portion of the legislative history as “augmenting]” its conclusions:
“The Board of Review shall affirm a finding of guilty of an offense or a lesser included offense ... if it determines that the finding conforms to the weight of the evidence and that there has been no error of law which materially prejudices the substantial rights of the accused.... The Board may set aside, on the basis of the record, any part of a sentence, either because it is illegal or because it is inappropriate. It is contemplated that this power will be exercised to establish uniformity of sentences throughout the armed forces.”
Id. at 577 n. 8, 77 S.Ct. 1027 (emphases added) (quoting S.Rep. No. 81-486, at 28 (1949)); see also H.R.Rep. No. 81-491, at 31-32 (1949) (containing same language). Thus, Jackson and the legislative history are congruent: A sentence that is illegal is incorrect in law and one that is inappropriate is incorrect in fact. If the sentence is illegal or inappropriate, the CCA should instead affirm the sentence that should be approved — a sentence that is correct in law and fact.
After the Board of Review set aside Jackson’s murder conviction, his life sentence was incorrect in law — it exceeded the maximum punishment permitted for attempted rape, which was twenty years. After considering the entire record, the Board of Review determined, as a matter of fact, that confinement for twenty year’s was the legal and appropriate sentence. To read Article 66(c) in the manner the majority does — that the CCA’s authority to determine sentence appropriateness stems from its duty to affirm only that part of the sentence that should be approved — renders superfluous the requirement to find the sentence correct in fact, something we are discouraged from doing. See Solimino, 501 U.S. at 112, 111 S.Ct. 2166.
VII.
Contrary to the position taken by the Government, I agree with the majority’s grammatical assessment of Article 66(c): The words “should be approved” apply to a CCA’s review of both findings and sentence. Nerad, 69 M.J. at 142. But I understand the *153 words to apply in a different manner, one that is consistent with the rest of the statute, including Article 66(d), UCMJ.
Article 66(d) provides that the CCA may order a rehearing if it sets aside both the findings and sentence. The “should be approved” language in Article 66(c) ties the power of the CCA to determine whether the findings and sentence are correct in law and fact with Article 66(d)’s limitations on ordering a rehearing. If only the sentence is incorrect in law or fact, the CCA may not order a rehearing. See Jackson, 353 U.S. at 579, 77 S.Ct. 1027; Article 66(d), UCMJ. The CCA itself must determine what sentence “should be approved” — one that is correct in law and fact. If the CCA sets aside a finding and sentence it may order a rehearing. Article 66(d), UCMJ. The CCA does not order a rehearing if it sets aside a finding of guilty but the evidence nevertheless established the accused’s guilt of a lesser included offense. Instead, it affirms the finding and sentence that “should be approved” — one that is correct in law and fact.
In the ease now before us, the CCA held that, pursuant to its authority under Article 66(c) to affirm only those findings that should be approved, it had authority to overturn Appellee’s guilty plea to the possession of child pornography “even in the absence of legal or factual error.” Nerad, 67 M.J. at 751 (citing United States v. Tardif, 57 M.J. 219, 224 (C.A.A.F.2002)). As the findings were concededly correct in law and fact, and there appears to be no basis in law or fact for setting aside his guilty plea (indeed, that issue was not even raised), the CCA was without authority to determine that the conviction for possession of child pornography should not be affirmed. This conclusion is consistent with Jackson and our longstanding precedent, United States v. Waymire, 9 C.M.A 252, 26 C.M.R. 32 (1958).
VIII.
In Waymire, the Board of Review could not decide whether a court-martial had jurisdiction over the accused for one of his offenses. Id. at 254, 26 C.M.R. at 34. In lieu of reaching a decision on the jurisdiction question and without deciding whether the conviction was incorrect in law or fact, the Board of Review dismissed the offense in an act this Court characterized as akin to a compromise or arbitration. Id. at 253-54, 26 C.M.R. at 33-34. We held that the Board had exceeded the scope of its statutory authority and reversed. Id. at 255, 26 C.M.R. at 35.
The majority asserts that, in Waymire, we did not purport to interpret “what the words ‘should be approved’ entailed in the context of a board’s action on legally and factually sufficient findings,” and that “Waymire thus serves as precedent for the unremarkable proposition that CCAs may not disapprove findings on equitable grounds or disregard their statutory duty to determine legal and factual sufficiency.” Nerad, 69 M.J. at 143. I disagree.
In Waymire, we did interpret the meaning and scope of the authority of the Boards of Review under Article 66(c):
The extent of a board of review’s powers over findings have frequently been the subject of review by this Court. In United States v. Fleming, 3 C.M.A 461,13 C.M.R. 17, we said that a board of review “is under a duty to affirm so much of the findings of guilty as is not affected by error committed at the trial.” Unlike a convening authority, who may disapprove findings of guilt for any reason, or for no reason at all, a board of review may only disapprove such findings as it finds incorrect in law and fact. United States v. Massey, 5 C.M.A 514, 18 C.M.R. 138. It was never intended that a board of review be given the power to disapprove findings in its “discretion.” Cf. Article 64, of the Uniform Code, supra, 10 U.S.C. § 864. Not only does Article 66, supra, require that a board affirm findings of guilt which it determines to be correct in law and fact, but also that such determination be made “on the basis of the entire record.” In United States v. Whitman, 3 C.M.A 179, 11 C.M.R. 179, we said that it was error for a board of review to rely upon matter lying outside the record of trial in setting aside an otherwise valid conviction. It was *154 held in that case that such action went well beyond the statutory limits established by the Code. Cf. United States v. Burns, 2 C.M.A. 400, 9 C.M.R. 30. In the instant case, there is no question but that the board of review, in setting aside the forgery conviction solely on the basis of “substantial justice,” exceeded the scope of its authorized statutory functions. United States v. Gordon, 2 C.M.A. 632, 10 C.M.R. 130.
9 C.M.A. at 255, 26 C.M.R. at 35 (emphasis added).
This Court did not just opine that the CCAs may only disapprove findings by reference to legal standards. Nerad, 69 M.J. at 143. It provided the standard: The CCA must affirm the conviction unless prejudicial error was committed at trial. Waymire, 9 C.M.A. at 255, 26 C.M.R. at 35; see also Jackson, 353 U.S. at 577 n. 8, 77 S.Ct. 1027.
The majority further attempts to trivialize Waymire by asserting that one month after deciding that case we suggested that the CCAs had the power to disapprove a finding that is correct in law and fact. Nerad, 69 M.J. at 143-44 (citing United States v. Drexler, 9 C.M.A. 405, 408, 26 C.M.R. 185, 188 (1958)). But that is not what Drexler says or means. As the majority quotes, “ ‘an appellate tribunal can dismiss even a valid finding as part of its action in correcting errors at the trial.’ ” Id. at 143 (quoting Drexler, 9 C.M.A. at 408, 26 C.M.R. at 188) (emphasis added). Although Drexler’s convictions were valid, in the sense that each was factually and legally sufficient on its own, the Board of Review did find an error of law — one of the charges was multiplicious with another. Drexler, 9 C.M.A. at 407, 26 C.M.R. at 187. Although at the time, reconsideration of the sentence was thought to ‘“cure any error resulting from any possible multiplication,’ ” we determined that dismissing the duplicating charge was within the sound discretion of the Board of Review. Id. at 408, 26 C.M.R. at 188 (quoting United States v. McCormick, 3 C.M.A. 361, 363, 12 C.M.R. 117, 119 (1953)). Rather than contradict Waymire as the majority contends, Drexler actually supports it. The Board of Review in Drexler corrected an error of law; it did not act as a matter of discretion.
Nor is Waymire a mere sport, a unique holding unbuttressed by other authority. In fact, there was substantial authority prior to Waymire for the same view of the power of the Boards of Review. See United States v. Fleming, 3 C.M.A. 461, 465, 13 C.M.R. 17, 21 (1953) (positive duty of Board of Review to affirm findings not affected by error at trial); United States v. Whitman, 3 C.M.A. 179, 180, 11 C.M.R. 179, 180 (1953) (Board of Review exceeds Article 66 power when it set aside findings because it would “create an injustice” in light of convening authority action in a related case).[3]
IX.
“[T]he doctrine of stare decisis is of fundamental importance to the rule of law.” Welch v. Texas Dep’t of Highways and Pub. Transp., 483 U.S. 468, 494, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987). “Adherence to precedent promotes stability, predictability, and respect for judicial authority.” Hilton v. South Carolina Pub. Rys. Comm’n, 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991). Stare decisis applies with “special force in the area of statutory interpretation” because “the legislative power is implicated, and Congress remains free to alter” a court’s interpretation. Patterson v. McLean Credit Union, 491 U.S. 164, 172-73, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), quoted in Hilton, 502 U.S. at 202, 112 S.Ct. 560.
For those reasons, we should “not depart from the doctrine of stare decisis without some compelling justification.” Hilton, 502 U.S. at 202, 112 S.Ct. 560. The majority has not provided such compelling justification to jettison Waymire and the eases that preceded it.
*155 X.
The majority suggests that the CCA’s authority to disapprove a finding that is correct in law and fact is “cabined” but provides scant support for the proposition. Nerad, 69 M.J. at 146—47. It hints that the CCA’s decision in this ease might have been acceptable if it had identified some error — “even error that would not preclude a determination that the finding was correct in law and fact.” Nerad, 69 M.J. at 147. Such a conclusion guts Article 59(a), UCMJ: “A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.”
XI.
As the majority opinion announces new law, it is appropriate to consider how this grant of authority to the CCAs may operate.
The majority asserts that the CCAs have “broad,” although not unfettered, authority to disapprove a finding that is correct in law. Nerad, 69 M.J. at 140. It insists that “the statutory phrase ‘should be approved’ does not involve a grant of unfettered discretion but instead sets forth a legal standard subject to appellate review.” Id. at 146 (citing United States v. Hutchison, 57 M.J. 231, 234 (C.A.A.F.2002); Lacy, 50 M.J. at 288).
The majority then asserts that for findings the CCAs’ authority is “cabined.” Id. at 146-47. If by “cabined,” the majority is applying the “ordinary” meaning of the word — confined within a narrow space or limits, see Webster’s Third New International Dictionary, Unabridged 309 (2002) — it seems contrary to the characterization of a CCA’s sentencing power employed in the cases it cites. In Hutchison, 57 M.J. at 234, and Lacy, 50 M.J. at 287-88, this Court described a CCA’s sentencing authority as a “highly discretionary power” that this court reviews for an abuse of discretion. See also United States v. Claxton, 32 M.J. 159, 162 (C.M.A.1991) (“A clearer carte blanche to do justice would be difficult to express.”).
Whether the majority’s legal standard is “cabined” or highly discretionary, in the end it amounts to no standard at all. The majority states that it will accept a CCA’s decision to disapprove findings that are correct in law and fact “unless in disapproving the findings the CCA clearly acted without regard to a legal standard or otherwise abused its discretion.” Nerad, 69 M.J. at 147. It suggests that it might have upheld the CCA’s judgment if it had (1) identified some rationale or error, even a harmless one, or (2) identified some “tangible factors” leading it to conclude that the finding of guilty “unreasonably exaggerated the criminality of’ Appellee’s conduct or “caused the charge, albeit lawful,” to constitute “an abuse of prosecutorial discretion.” Id. at 147-48 (citations and brackets omitted).
In fact, what we have done here is to tacitly grant the CCAs a power that Congress withheld even from those creatures of pure equity, the boards for correction of military records: the power to revise the findings of courts-martial simply because a particular CCA panel does not like a particular result, or regards it as “unjust.” See 10 U.S.C. § 1552(f). I can discern no principled standard by which the CCAs are to implement today’s decision or we are to review these actions. The CCAs, limited only by their own sense of judicial restraint — the measure of their own feet — are now free to act as councils of revision. Thus, despite protestations to the contrary, the majority’s decision grants equitable power to the CCAs.
The majority’s decision is unsupported by Jackson v. Taylor and our case law, is not compelled by the language of Article 66, UCMJ, and is a result surely not intended by Congress. As the CCA found Appellee’s guilty plea to be correct in law and fact, I believe its decision to set aside the conviction for possession of child pornography exceeded its statutory authority and was without effect. I would order the conviction reinstated.

. Appellee could have challenged the specification at trial and asserted that, under the circumstances, he was not guilty. Instead, he chose to plead guilty. In that situation, the appropriate inquiry for the CCA would have been whether there was a substantial basis in law or fact for rejecting the plea. United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F.2008). Apparently there was none. Instead of affirming, however, the CCA chose to set sail on these uncharted waters. To permit an accused to receive the benefit of a pretrial agreement and yet prevail on appeal when the conviction is correct in law and fact is astonishing.

. As the Supreme Court noted in Jackson, Congress never intended a case to be remanded back to a court-martial for a sentence rehearing. See Article 66(d), UCMJ (permitting remand when the CCA "sets aside the findings and sentence”) (emphasis added); but see United States v. Miller, 10 C.M.A. 296, 299, 27 C.M.R. 370, 373 (1959) (concluding that it is "entirely unreasonable” to construe the statutory language in Article 66(d) as authorizing a rehearing only if the findings and sentence were set aside; that it would read the term "and” to mean "or”; and that Jackson did not intend to limit the power of the appellate courts to order rehearing on sentence alone); accord United States v. Sills, 56 M.J. 239, 240 (C.A.A.F.2002).

. Neither United States v. Claxton, 32 M.J. 159 (C.M.A.1991), nor United States v. Tardif, 57 M.J. 219 (C.A.A.F.2002), cited by the CCA as support for its action, can carry the weight placed on them. Claxton was a waiver case involving sentencing, in which the statement about findings was an obiter dictum; Tardif dealt entirely with sentencing.